[No. 5336. Decided September 30, 1905.]

# Nicomen Boom Company, *Appellant,* v. North Shore Boom & Driving Company, *Respondent.*[1]

Logs and Logging — Boomage Corporations — Location — Preference Rights—Future Needs of Public. A boom company being, under the statute of this state, a public service corporation, has a preference right to construct a boom within its located territory, in analogy to the rights of a railroad company conferred by its selection of a route, and it has the right to anticipate the future needs of service for the public.

Same—Non-User of Part of Location—Needs of Public—Extension of Boom—Diligence. Nonuser of a portion of a boom company's location, duly appropriated by the filing of a plat and survey, does not constitute an abandonment of that part, when the needs of the public did not then require it, and it had constructed such portion of its works as were required by existing demands, and there was no lack of diligence to construct an extension of the boom over the portion not used.

Same—Diligence—Evidence—Sufficiency. A finding that there is no lack of diligence by a boom company in making use of its location is sustained, where it had always intended to make an extension when required, had spent $16,000 on its primary location, which met present demands, and was proceeding to make an extension.

Same—Non-User—Reversion of Condemned Lands When Use Ceases—Lands Not Yet Used. Bal. Code, § 4378, providing that if the use of lands condemned for booming purposes shall cease for one year, they shall revert to the owner, applies only to lands condemned, and does not apply to lands located with reference to future needs the necessity for the use of which has not arisen.

Same—Monopoly of Stream—Good Faith of Locator—Necessary Control of Stream. The argument against a monopoly does not preclude a boom company from so locating its site as to control the booming on a certain river, if the available booming extent is such as to reasonably prevent the operation of more than one boom.

Appeal from a judgment of the superior court for Pacific county, Albertson, J., entered March 12, 1904, upon conclusions of law in favor of the defendant, after finding the

1 Reported in 82 Pac. 412.

facts on a trial on the merits before the court without a jury, dismissing an action to enjoin the construction of a boom. Reversed.

*W. W. Cotton, James G. Wilson, Welsh Bros., W. B. Stratton,* and *W. H. Gudgel,* for appellant.

(1) By filing its plat of location plaintiff acquired the prior right to the location for booming purposes, which right was in the nature of a lien on the location, which could not be defeated by a rival company subsequently filing a map covering the same property. *Rochester etc. R. Co. v. New York etc. R. Co.,* 110 N. Y. 128, 17 N. E. 680; *Barre R. Co. v. Montpelier etc. R. Co.* 61 Vt. 1, 17 Atl. 923, 15 Am. St. 877, 4 L. R. A. 785; *Sioux City etc. R. Co. v. Chicago etc. R. Co.,* 27 Fed. 770; *Morris etc. R. Co. v. Blair,* 9 N. J. Eq. 635; *Titusville etc. R. Co. v. Warren etc. R. Co.,* 12 Phila. 642; *Williamsport etc. R. Co. v. Philadelphia etc. R. Co.,* 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *Railway Co. v. Alling,* 99 U. S. 463, 25 L. Ed. 438; Lewis, Eminent Domain, § 306; Pierce, Railroads, p. 157; 2 Woods, Railway Law, § 237. A boom company like a railroad company has a discretion in selecting the location of its works. *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670.

(2) Plaintiff's right to use the upper portion of its located territory and property acquired for that purpose was not lost by the failure to construct its boom throughout the entire distance immediately. Plaintiff had the right to acquire property for the future necessities of its business. *Yost v. Philadelphia R. Co.,* 29 Leg. Int. 85; *Western Union Tel. Co. v. Pennsylvania etc. R. Co.,* 120 Fed. 362; *In re Staten Island Rap. Tran. Co.,* 103 N. Y. 251, 8 N. E. 548; *Pittsburg etc. R. Co. v. Peet,* 152 Pa. St. 488, 25 Atl. 612, 19 L. R. A. 467; *Kountze v. Proprietors of Morris Acqueduct,* 58 N. J. L. 303, 33 Atl. 252; *St. Louis etc. R. Co. v. Foltz,* 52 Fed. 627; *Lodge v. Philadelphia etc. R. Co.,* 8 Phila. 345;

*Pittsburg Junction R. Co.'s Appeal,* 122 Pa. St. 511, 6 Atl. 564, 9 Am. St. 128; *Pennsylvania R. Co. v. National Docks etc. R. Co.,* 57 N. J. L. 86, 30 Atl. 183; *Pennsylvania R. Co. v. Borrough of Freeport,* 138 Pa. St. 91, 20 Atl. 940..

(3) The failure to construct its boom works throughout the entire distance immediately was not an abandonment. Mere nonuser does not constitute abandonment. 3 Elliott, Railroads, § 931; *Townsend v. Michigan Cent. R. Co.,* 42 C. C. A. 570, 101 Fed. 757; *Roanoke Investment Co. v. Kansas City etc. R. Co.,* 108 Mo. 50, 17 S. W. 1000; *Perth Amboy Terra Cotta Co. v. Ryan,* 68 N. J. L. 474, 53 Atl. 699; *Denison etc. R. Co. v. St. Louis etc. R. Co.,* 96 Tex. 233, 72 S. W. 161, 201; *Welsh v. Taylor,* 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535; *Weed v. McKeg,* 79 App. Div. 218, 79 N. Y. Supp. 807; *Durfee v. Peoria etc. R. Co.,* 140 Ill. 435, 30 N. E. 686; *Barlow v. Chicago etc. R. Co.,* 29 Iowa 276; *Columbus v. Columbus etc. R. Co.,* 37 Ind. 294; *St. Louis etc. R. Co. v. Foltz, supra; Morgan v. Des Moines etc. R. Co.,* 113 Iowa 561, 85 N. W. 902; *Conabeer v. New York etc. R. Co.,* 156 N. Y. 474, 51 N. E. 402; *Haight v. Littlefield,* 147 N. Y. 338, 41 N. E. 696; *Pennsylvania R. Co. v. Borrough of Freeport, supra; Memphis etc. R. Co. v. Humphreys,* 65 Ark 631, 48 S. W. 86; *Kansas City & S. E. R. Co. v. Kansas City & S. W. R. Co.,* 129 Mo. 62, 31 S. W. 451; *Rutland R. Co. v. Chaffee,* 71 Vt. 84, 42 Atl. 984, 48 Atl. 699; *Scarritt v. Kansas City etc. R. Co.,* 148 Mo. 676, 50 S. W. 905; *Chicago etc. R. Co. v. Moulton etc. R. Co.,* 57 Iowa 249, 10 N. W. 639; *Eddy v. Chace,* 140 Mass. 471, 5 N. E. 306; *Johnston v. Hyde,* 33 N. J. Eq. 632.

(4) The question of forfeiture cannot be raised by defendant in this action. Such question can only be raised by the state in a direct proceeding in the nature of a *quo warranto* or *scire facias. Denison etc. R. Co. v. St. Louis etc. R. Co., supra; Pittsburg V. & C. R. Co. v. Pittsburgh C. & S. L. R. Co.,* 159 Pa. St. 331, 28 Atl. 155; *Western Pennsylvania R. Co.'s Appeal,* 104 Pa. St. 399; *Chicago etc. R.*

*Co. v. Wright,* 153 Ill. 307, 38 N. E. 1062; *Bravard v. Cincinnati etc. R. Co.,* 115 Ind. 1, 17 N. E. 183; *Cincinnati etc. R. Co. v. Clifford,* 113 Ind. 460, 15 N. E. 524; *Nicolai v. Maryland Agricultural etc. Ass'n,* 96 Md. 323, 53 Atl. 965.

(5)    Nonuser of property acquired for booming purposes in a manner otherwise than by the exercise of the right of eminent domain does not constitute forfeiture.    Bal. Code, §§ 4378, 4388; *Pittsburgh etc. R. Co. v. Pittsburgh C. & S. L. R. Co.,* 159 Pa. St. 331, 28 Atl. 155.    See, also, authorities cited under point 2.    The statute providing for forfeiture if the use for certain purposes shall "cease" for a certain period does not apply to a case where land had been acquired for a purpose and not yet used.    *Jordan v. Haskell,* 63 Me. 189.

(6)    The defendant having filed its map of location and acquired its property subsequently to the plaintiff's, with knowledge of the plaintiff's rights in the location, acquired no right to construct its boom.    *Railway Co. v. Alling, supra; Morris etc. R. Co. v. Blair, supra; Titusville etc. R. Co. v. Warren etc. R. Co., supra; Barre R. Co. v. Montpelier etc. R. Co., supra; Wilkesbarre etc. R. Co. v. Danville etc. R. Co.,* 29 Leg. Int. 373.

(7)    Since the passage of the river and harbor act, a compliance with both the United States requirements and the state requirements and the joint assent or permit of both authorities is necessary to render an obstruction in a navigable stream of the United States legal.    26 Stat. 436, 454; 27 Stat. 88, 110; 30 Stat. 1121, 1151; *Cummings v. Chicago,* 188 U. S. 410, 23 Sup. Ct. 472, 47 L. Ed. 525; *Montgomery v. Portland,* 190 U. S. 89, 23 Sup. Ct. 735, 47 L. Ed. 965; *United States v. Rio Grande Dam & Irr. Co.,* 174 U. S. 690, 19 Sup. Ct. 770, 43 L. Ed. 1136; *Calumet Grain etc. Co. v. Chicago,* 188 U. S. 431, 23 Sup. Ct. 477, 47 L. Ed. 532. North River is a navigable river of the United States. *Escanaba etc. Transp. Co. v. Chicago,* 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442; 30 Stat. 1149; 28 Stat. 360; 32 Stat.

370. Plaintiff's right is such a right as will be protected by injunction. *Dawson v. McMillan,* 34 Wash. 269, 75 Pac. 807 · *Carl v. West Aberdeen Land etc. Co.,* 13 Wash. 616, 43 Pac. 890.

*W. H. Abel* and *H. W. B. Hewen,* for respondent, contended among other things, that the act limits a boom company to such land as is "necessary." Bal. Code, §§ 4378, 4388; *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670. An exclusive right will not be presumed. *Charles River Bridge v. Warren Bridge,* 11 Pet. 420, 9 L. Ed. 773; *The Granite State,* 3 Wall. 310, 18 L. Ed. 179; *Pearsall v. Great Northern R. Co.,* 161 U. S. 646, 16 Sup. Ct. 705, 40 L. Ed. 848. Rights against the state must be clearly defined. *Leavenworth etc. R. Co. v. United States,* 92 U. S. 733, 23 L. Ed. 634; *Barden v. Northern Pac. R. Co.,* 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992; *North Springs Water Co. v. Tacoma,* 21 Wash. 517, 58 Pac. 773, 47 L. R. A. 214. As there can be no ownership in the corpus of water, the boom company acquires only a license or simple usufruct. *Rigney v. Tacoma Light etc. Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Atchison v. Peterson,* 20 Wall. 507, 22 L. Ed. 414. To secure a valid appropriation of water there must be a diversion, and application of it, within a reasonable time. *Low v. Rizor,* 25 Ore. 551, 37 Pac. 82; *Nevada Ditch Co. v. Bennett,* 30 Ore. 59, 45 Pac. 472, 60 Am. St. 777; *McDonald v. Bear River etc. Min. Co.,* 13 Cal. 220; *Thomas v. Guiraud,* 6 Colo. 530; *Ft. Morgan Land etc. Co. v. South Platte Ditch Co.,* 18 Colo. 1, 30 Pac. 1032, 36 Am. St. 259; *Offield v. Ish,* 21 Wash. 277, 57 Pac. 809. Diligence is required. *Nevada County v. Kidd,* 37 Cal. 282; *Ophir etc. Silver Min. Co. v. Carpenter,* 4 Nev. 534, 97 Am. Dec. 550; *Farmers High Line Canal etc. Co. v. Southworth,* 13 Colo. 111, 21 Pac. 1028, 4 L. R. A. 767; *Kelly v. Natoma Water Co.,* 6 Cal. 105. So much as is not applied cannot be regarded as having been appropriated. *McKinney v. Smith,*

21 Cal. 374; *Senior v. Anderson,* 115 Cal. 496; *New Mercer D. Co. v. Armstrong,* 21 Colo. 357, 40 Pac. 989; *Columbia Min. Co. v. Holter,* 1 Mont. 296; *Alder Gulch Con. Min. Co. v. Hayes,* 6 Mont. 31, 9 Pac. 581; *Simmons v. Winters.* 21 Ore. 35, 27 Pac. 7, 28 Am. St. 727; *Hindman v. Rizor* 21 Ore. 112, 27 Pac. 13; *Wheeler v. Northern Colorado Irr. Co.,* 10 Colo. 582, 17 Pac. 487, 3 Am. St. 603; *Butte Canal etc. Co. v. Vaughan,* 11 Cal. 143.   The Federal government alone, can complain of any violation of the Federal statutes or assent.   *Manuel v. Wulff,* 152 U. S. 505, 14 Sup. Ct. 651, 38 L. Ed. 532; *McKinley Creek Min. Co. v. Alaska United Min. Co.,* 183 U. S. 563, 22 Sup. Ct. 84, 46 L. Ed. 331. It is frequently necessary in floating logs upon navigable waters to arrest the whole mass of logs for the purpose of segregation.    This right, when reasonably exercised, furnishes no ground for complaint.   *Nester v. Diamond Match Co.,* 105 Fed. 567; *Watts v. Tittabawassee Boom Co.,* 52 Mich. 203, 17 N. W. 809; *West Branch Boom Co. v. Lumber etc. Co.,* 121 Pa. St. 143, 6 Am. St. 766; *Osborne v. Knife Falls Boom Co.,* 32 Minn. 412, 50 Am. Rep. 590; *Leigh v. Holt,* Fed. Cas. No. 8,220; *Buchanan v. Grand Rapids etc. Log. Co.,* 48 Mich. 364, 12 N. W. 490; *Brown v. Kentfield,* 50 Cal. 129. The prior right gained by a company possessing the right of eminent domain, which arises from the filing of a plat or map of definite location, must be followed within a reasonable time by actual occupation and construction. *Sioux City etc. R. Co. v. Chicago etc. R. Co.,* 27 Fed. 770; *Titusville etc. R. Co. v. Warren,* 12 Phila. 642; *Barre R. Co. v. Montpelier etc. R. Co.,* 61 Vt. 1, 17 Atl. 923, 15 Am. St. 877, 4 L. R. A. 785; *Rochester etc. R. Co. v. New York etc. R. Co.,* 110 N. Y. 128, 17 N. E. 680; *Williamsport etc. R. Co. v. Philadelphia etc. R. Co.,* 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *Railway Co. v. Alling,* 99 U. S. 463, 25 L. Ed. 438.   The appellant is not entitled to damages on account of the use which respondent has made of that part of North River occupied by its boom.   *Lownsdale v. Grays*

*Harbor Boom Co.,* 21 Wash. 542, 58 Pac. 663; *Lownsdale v. Grays Harbor Boom Co.,* 117 Fed. 983; *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 740, 54 L. R. A. 199.

HADLEY, J.—This is a contest between two boom companies, their booms being located near the mouth of North river, in Pacific county, Washington. The action is in equity, and was commenced by the Nicomen Boom Company for the purpose of restraining the defendant, the North Shore Boom & Driving Company, from constructing a boom upon a portion of the waters of said river, and within the limits of territory included in the plat filed by the plaintiff company, as required by law. Both companies are organized under the laws of this state, which authorize the organization of corporations for the purpose of catching, booming, sorting, rafting, and holding logs, lumber, or other timber products.

In April, 1900, being in due time after the organization of the plaintiff company, it caused to be filed, in the office of the secretary of state of the state of Washington, its plat and survey, showing so much of the shore lines and waters of North river, and lands contiguous thereto, as it proposed to appropriate under the laws of this state. Before beginning the construction of its boom, it submitted to the secretary of war of the United States a plan of its proposed improvements, and a plat of the territory to be occupied thereby, and was, by said war department, granted permission to construct a boom within the limits of said river covered by said plat of location. The territory designated by said plat of location embraces the shores of North river, which river is tributary to Willapa harbor, a bay leading into the Pacific Ocean, and the territory extends from near the mouth of the river, on both sides, for some distance up the stream. The plaintiff thereupon acquired by purchase such upland and shore land, on the left side of said river reckoning down

stream, as was necessary for its use in the premises, and promptly proceeded to erect boom·works along the left side of the river, but stopped short of the upper end of the territory covered by its plat of location. The boom was substantially constructed at a cost of about $16,000; and, from the time of its erection until this controversy arose, it was constantly operated as originally constructed.

While the plaintiff has done some work above, yet its boom has never been completed beyond, its rudder sheer, as originally built. The plaintiff has, however, always expected to extend the boom within the limits of said plat of location, as the demands of business might require, and some weeks before the commencement of this action it had ordered piling for the purpose of extending its boom, as originally constructed, about one thousand feet further up the river. Through some delay, for which plaintiff was not responsible, it did not have this piling upon the ground, and therefore did not commence the actual work of extending the boom until some days after the defendant had commenced to construct its boom, as hereinafter mentioned. It was estimated by the plaintiff that the output of logs on North river, for the season next following, would be largely in excess of the output for the previous year, and that, in such case, the enlargement of its boom would be necessary for the purpose of receiving and handling such increased output.

About this time, in August, 1903, the defendant company was organized, and it, also, filed its plat and survey in the office of the secretary of state, showing so much of the water and shore lines of North river, and land contiguous thereto, as it proposed to appropriate for its boom and driving purposes. It also claims that, before commencing to construct its boom, it secured from the war department of the United States permission to construct within its said location. The plat of location filed by the defendant in the office of the secretary of state covered, substantially, the part of the territory embraced in the plat of the plain-

tiff lying above the upper end of the sheer boom constructed
by plaintiff, as aforesaid. The defendant then proceeded
to acquire uplands and tide lands within its plat of loca-
tion, on the right side of the river, considered necessary
for its use in the operation of its proposed boom, such lands
being on the bank opposite to the side of the river occupied
by the plaintiff's boom as constructed. On September 4,
1903, the defendant began the driving of piles for the con-
struction of its boom, and erected a line of dolphins within
the limits of both said plats of location.

Thereupon this action was brought. An emergency re-
straining order was issued, and afterwards, upon notice, a
temporary injunction was granted, pending final hearing of
the action. It appears that the indemnity bond required
by the court, under the last named injunctional order, was
not given by plaintiff, and thereupon the defendant con-
tinued with its work of construction. At the time of the
trial, the defendant had substantially completed the construc-
tion of its proposed boom.

The boom of the defendant is so constructed that logs
coming down the river, intended to reach the plaintiff's
boom, will necessarily enter the main boom of the defendant.
The booms as proposed by the plaintiff and defendant can-
not both be constructed. If the boom of the plaintiff should
be extended up the river, the passage between its line of
dolphins and the dolphins of defendant, on the other side
of the stream, would be so narrow as to block navigation.
Moreover, it would be impracticable to operate both booms
under such circumstances. If the defendant is permitted
to operate its boom, as constructed, the boom of plaintiff will
receive only such timber from up the river as may escape
from the boom of defendant, and such as may be trans-
mitted through that boom to plaintiff.

The foregoing facts are practically undisputed in the
case, as we are advised by the record and the findings of
the court, and by such exceptions as were taken to the find-

ings.   Exceptions were taken to certain findings embodying facts not stated above, and to the refusal to make certain others, and on this appeal errors are assigned thereon.   There is, however, no discussion in the brief in reference to these claims of error, and no particular evidence is pointed out in support thereof.   We therefore believe we have substantially stated the controlling facts, and that they may be treated as undisputed.   After an extended trial, and the consideration of much evidence, the court entered judgment, denying the plaintiff's application for an injunction, and dismissing the action.   This appeal is from that judgment. For reasons hereinbefore stated, we shall not discuss such errors as have been assigned in relation to the court's findings of facts, but shall confine ourselves to the matters discussed in the briefs, all of which involve the correctness of the conclusions of law and the judgment thereon.

Boom companies in this state are quasi-public corporations, having the power of eminent domain, required by law to file a map of location, and to perform booming services for all persons requesting the same.   See, Bal. Code, §§ 4378-4394.   The provisions embodied within the above cited sections comprise the substance of two acts of the legislature passed, respectively, in the years 1890 and 1895.   Section 4379 contains the following:

"Any corporation hereafter organized for the purpose mentioned in the last preceding section of this chapter shall, within ninety days after its articles of incorporation have been filed, proceed to file in the office of the secretary of state a plat or survey of so much of the shore lines of the waters of the state and lands contiguous thereto as are proposed to be appropriated for said purpose by said corporation."

Appellant complied with the above, and built a boom covering a portion of the territory sufficient to meet the then demands, so far as appears.   It becomes necessary to determine the extent of its rights in the remaining territory.

It is respondent's position that appellant has lost its rights
in the located territory within which it has not actually con-
structed boom works.  In suggesting to this court the prin-
ciples which appellant claims should be applied in the
premises, it argues that an analogy exists between the rights
acquired under the filing of location plats by boom com-
panies, in this state, and those arising from the filing of
similar plats by railroad companies.

We have been referred to authorities which consider the
rights of railroad companies with reference to their location
plats, and these authorities we have examined.  Under legis-
lative schemes for the location of railroad lines which are
initiated by the filing of plats of location, it is held that
compliance with the law in that particular secures to the
locating company the right to construct and operate a rail-
road upon such line, exclusive, in that respect, as to all other
railroad corporations, and free from the interference of any
party.  The right to locate its line of road in the place of
its selection is delegated to the corporation by the sovereign
power.  The further right to subsequently acquire, *in invitum,*
the right of way and necessary lands for operation of the
road from the land owners is likewise delegated.  The source
of the franchise is in the sovereign power, which power con-
fers the franchise upon the corporation as its delegated rep-
resentative, and the grant is for public, and not for private,
purposes.  It is held that, inasmuch as public considerations
enter into the grant of the franchise, public policy therefore
favors it for the public convenience and use, and that a rail-
road company, by the filing of its plat of location, and by
reason of the notice thereof, impresses upon the lands a right
in the nature of a lien in favor of its right to construct,
which ripens into title through purchase or condemnation
proceedings.  It is further held that, when a franchise has
been thus conferred, no other railroad company may acquire
title to the lands within such a location, or construct a road
thereon, to the exclusion of the right of the first locating

company to acquire such title *in invitum,* and to construct its road upon the lands. Injunction has also been adopted as the proper remedy to prevent such interference. In support of the above propositions, which we have stated generally, we cite the following authorities: *Rochester etc. R. Co. v. New York etc. R. Co.,* 110 N. Y. 128, 17 N. E. 680; *Barre R. Co. v. Granite R. Co.,* 61 Vt. 1, 17 Atl. 923, 15 Am. St. 877, 4 L. R. A. 785; *Sioux City etc. R. Co. v. Chicago etc. R. Co.,* 27 Fed. 770; *Morris etc. R. Co. v. Blair,* 9 N. J. Eq. 635; *Titusville etc. R. Co. v. Warren etc. R. Co.,* 12 Phila. 642; *Williamsport etc. R. Co. v. Philadelphia etc. R. Co.,* 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *Railway Co. v. Alling,* 99 U. S. 463.

Respondent argues that the suggested analogy between railroad companies, and boom companies as organized under the laws of this state, is not well taken, and it therefore urges that search must be made for some other line of authorities in order to find an analogy applicable to the questions in this case. It cites and discusses cases relating to the diversion and appropriation of water for mining, milling, irrigation, and manufacturing purposes. We are not impressed with the force of the analogy suggested by respondent. The appropriation of water for the purposes mentioned is ordinarily for private use, and not to serve the public generally. The appropriator is permitted to take as much water as he can reasonably use to supply his own private property. It is held that he must proceed with reasonable diligence to determine how much he requires, and not deprive others of the use of water which he does not require. He is not compelled to serve the public in any respect, and the amount of water he may appropriate for his necessary purposes does not depend upon the public. The primary object in granting charters to railroad companies is that they shall serve the public, and the right of eminent domain to secure right of way and necessary grounds is given to them in order to aid such public purpose. The same is true of boom companies

under the statutes of this state. Both are strictly public service corporations, and are required by law to serve the public in their respective spheres of operation. That the legislature intended that an analogy shall exist between the two classes of corporations may be inferred from the boom statute itself. Bal. Code, § 4378, which confers the power of appropriation of lands upon boom companies, provides as follows:

"If such corporation shall not be able to agree with persons owning land, shore rights, or other property sought to be appropriated, as to the amount of compensation to be paid therefor, the compensation therefor may be assessed and determined and the appropriation made in the manner provided by law for the appropriation of private property by railways:"

It will thus be seen that the method provided for appropriating private property by railroad companies is specifically adopted as the method for boom companies. Respondent argues, however, that the rights acquired by boom company locations are not similar to those acquired by railroad companies, in that it claims that the rights of the latter are corporeal in their nature, while those of the former relate to water, and therefore constitute a mere license or usufruct, incorporeal in its nature.

The state, however, has dominion over both the land and the water. The legislative scheme for boom companies requires that the land owner shall permit his land to be subjected to the use of such companies, upon receiving compensation therefor, and the title is thus acquired. It is true, the state does not pass title to the beds and waters of its streams; but, as an accompaniment of the right to condemn adjacent lands, it has directly conferred upon boom companies the right to locate and operate booms in such waters. As a part of the location plan, the plat and survey shall designate not only the lands, but the waters, desired to be used. The plat when filed becomes notice to the world

of the appropriated territory, and while the state requires the upland owner to submit to the use of his lands, it also confers, directly upon the locator, the right of dominion over the water in aid of the other use. In considering these location rights, we therefore see no reason for making a distinction between those acquired upon land and those acquired in the waters. The state has not only authorized both, but they are combined rights, having in view a common end, and neither would be useful for accomplishment of that end without the aid of the other. We therefore think the analogy suggested by appellant is forceful, and that the railroad cases cited are useful in aiding us to determine the principles applicable here.

Applying the rule followed in the railroad cases, appellant had the right, after filing its plat of location, to acquire the title to the lands within the limits of its location. It was an absolute right which it could enforce by condemnation proceedings to the exclusion of any other boom company that might seek to appropriate the same land. It did acquire these lands, not by condemnation, but by purchase. · Having thus established its location and acquired the necessary lands, it proceeded to construct its boom, but did not construct it throughout the entire located territory, although it has always intended to do so, as the public demand might require. We think, in reason, that the appellant had the right, when it filed its plat of location, and acquired property for the purpose of constructing its boom, to take into consideration the future requirements of its business, and that it should not be restricted merely to the territory required at the time its first works were erected. It would seem that this must be so, in view of the obligations appellant assumed as a public service corporation. The statute requires that it shall catch, hold, and assort the logs and timber products of *all* persons requesting such service. Bal. Code, § 4381. Boom companies are also made liable for loss or damages resulting from neglect, carelessness, or un-

necessary delay.  Bal. Code, § 4384.  If a boom company
could not take into consideration the future development and
growth of the timber industry in making its location, it would
become greatly embarrassed in performing the services for
the public required of it by law.  Moreover, if, in order
to anticipate and provide for such development, it can hold
its location selected for that purpose only by constructing
its boom throughout its entire selected territory, then it is
necessary to so construct in the beginning, and the expendi-
ture of large sums of money might thus be required long in
advance of any necessity for it in aid of the public service.

In the case at bar, the sum of $16,000 was expended in
the beginning, which seems to have met the demands of that
time.  The construction throughout the located territory
would have required the expenditure of a much larger sum
of money, without any present necessity for it, and would
have exposed the additional constructed material to the action
of the water and elements, and to consequent deterioration
and decay, long before it would have been needed for the
service of the public.  That a boom company must have a
discretion in locating its works, and in determining the ex-
tent of necessary territory for its purposes, is recognized in
*Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586,
73 Pac. 670.  It is also held that the question of future
needs of railroad companies, in fulfilling their charter pur-
poses and performing their public duties as common carriers,
is one which should be given full consideration by a court
before it undertakes to deprive a company of any part of its
right of way in favor of another corporation.  Such com-
panies may anticipate future necessities and may, for that
purpose, hold territory not in actual use to the exclusion
of other companies.  *Western Union Telegraph Co. v. Penn-
sylvania R. Co.,* 120 Fed. 362; *In re Staten Island Rapid
Transit Co.,* 103 N. Y. 251, 8 N. E. 548; *Pittsburgh etc.
R. Co. v. Peet,* 152 Pa. St. 488, 25 Atl. 612, 19 L. R. A.

467; *Appeal of Pittsburgh Junction R. Co.,* 122 Pa. St. 511, 6 Atl. 564, 9 Am. St. 128.

Having thus acquired the first right to construct a boom within its located territory, and having, also, the right to anticipate future needs of the service it had undertaken for the public, what rights, if any, does appellant have in the remaining territory above its boom, as now constructed? It is evident that appellant never intended to abandon any part of its located territory. The court finds that it intended to extend its construction over this territory as necessity required. If there was an abandonment, it must have been by virtue of non-use of the territory, in the way of failure to extend and operate the boom thereon. However, in the absence of legislative provision to that effect, mere non-user does not of itself constitute an abandonment. It is held that, without such legislative provision, courts are not justified in fixing a limit at which mere failure to construct shall be held to be an abandonment. Abandonment is a question of intent, and while such intent may be found as a fact from long non-use, yet the non-use itself does not constitute an abandonment, and does not of itself defeat or impair acquired rights. 3 Elliott, Railroads, § 931; *Townsend v. Michigan Cent. R. Co.,* 101 Fed. 757; *Roanoke Inv. Co. v. Kansas City etc. R. Co.,* 108 Mo. 50, 17 S. W. 1000; *Perth Amboy Terra Cotta Co. v. Ryan,* 68 N. J. L. 474, 53 Atl. 699; *Denison etc. R. Co. v. St. Louis etc. R. Co.,* 96 Tex. 233, 72 S. W. 161, 201; *Welsh v. Taylor,* 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535; *Durfee v. Peoria etc. R. Co.,* 140 Ill. 435, 30 N. E. 686; *Barlow v. Chicago etc. R. Co.,* 29 Iowa 276; *Memphis etc. R. Co. v. Humphreys,* 65 Ark. 631, 48 S. W. 86; *Eddy v. Chace,* 140 Mass. 471, 5 N. E. 306; *Johnston v. Hyde,* 33 N. J. Eq. 632.

Appellant has not, therefore, abandoned its location by mere non-use. If it has forfeited its rights therein, it must be due to the operation of law for some further reason. Respondent insists that appellant did not proceed with dili-

gence to construct its extended boom.   Lack of proper dili-
gence is an element to consider in determining whether there
has been an actual abandonment.   The court's finding,
however, shows that the intention to extend the boom as
the public service required always existed, and in the absence
of a showing that diligence to meet that end was not exer-
cised, we think there was not an abandonment.   It is true,
as respondent says, the cases hereinbefore cited recognize the
necessity for diligence in order to hold location rights.   In
some of the cases a much longer, and in some a much shorter,
time elapsed than in the case at bar.   What is diligence in
any given case must depend upon the particular circum-
stances.   The relation that the delay may bear to the proper
past discharge of the locator's duties to the public, as well
as the necessity for future needs in the discharge of those
duties, should be taken into consideration.   Viewed from
that standpoint, for reasons already stated, we think there
was not an abandonment for mere lack of diligence.

Respondent further contends that there has been a for-
feiture by reason of the provision of the boom statute.   Bal.
Code, § 4378, contains the following:

"Provided, That any property acquired under the pro-
visions of this chapter by the exercise of the right of eminent
domain shall be used exclusively for the purposes of this
chapter, and whenever the use of said property as herein
contemplated shall cease for a period of one year, the same
shall revert to the original owner, his heirs or assigns, upon
the repayment of the original cost of same."

The above is from the statute of 1890.   A similar pro-
vision was included in the statute of 1895, and is found
in Bal. Code, § 4388.   It will be observed that the rever-
sion declared by the statute is of lands which have been
acquired by eminent domain, and it is evidently for the
benefit of the land owner who has involuntarily yielded his
land for a specific purpose.   The provision does not extend
to any further rights than those acquired by eminent domain.

Appellant acquired no lands within its location in that manner, but all were acquired by purchase. Moreover the provision applies to lands, the use of which shall "cease" for a period of one year. We think the intention of the statute is to require that when lands, which have been actually used for booming purposes, have not thereafter been used for such purposes for the period of one year, there shall be a reversion. The reason for the provision seems to be that, if the land has once been applied to the intended use, and that use then ceases for a year, it shall be presumed that the necessity for its use no longer exists, and the land owner shall then be entitled to re-enter and occupy it. We do not think the statute applies to lands located with reference to future needs, the actual necessity for the use of which has not yet arisen, but which necessity may reasonably be anticipated.

"The statute provides that, when such school house as is required of the town or district 'has ceased' to be thereon for two years, the lot may revert to the owner. Here the house has not ceased to be, nor begun to be, thereon. There must be the beginning before the end. This provision was intended to apply to an occupancy once had and abandoned." *Jordan v. Haskell,* 63 Me. 189.

Appellant further urges that, in any event, it is not within the province of respondent to ask a forfeiture, for the reason that the rights of appellant result from a compact or agreement between it and the state, and that inquiry into the question of forfeiture can only be made by the state, and that, too, in a direct proceeding in the nature of *quo warranto* instituted for that purpose. That is both an interesting and important question, but, in view of what we have already said in reference to the merits of the question of forfeiture in this case, it is unnecessary to pass upon the proposition as to who may ask a forfeiture. The necessary limits of this opinion are already extended, and we are therefore unwilling to pass upon this question now unless it were a necessary

factor in the disposal of the case. Appellant further urges
that the record shows that the respondent's boom and loca-
tion are not lawful, in that no sufficient permit has been
granted to it by the war department of the United States.
For reasons above stated, it is unnecessary that we shall
examine that question.

Respondent argues that, if appellant is permitted to hold
its location to the exclusion of the former from said terri-
tory, it will virtually place appellant in control of a monopoly
of the booming business upon North river. What may be
the practical effect in that particular is not here for our
consideration. We are simply called upon to determine ap-
pellant's rights under its location, as accorded to it by the
state. The legislature has wisely provided to prevent an
oppressive monopoly as against the public by limiting the
maximum charge that may be made by a boom company to
seventy-five cents per thousand feet. Bal. Code, § 4381.
The record shows that appellant has never charged as much
as the maximum rate. Still the legislature, without doubt,
contemplated that competition may exist where topograph-
ical and geographical conditions will admit thereof, and where
prior locators, who have in good faith become established,
may at the same time be protected in their locations.

It is said that the boom statutes contemplate that more
than one boom may exist upon the same river. That is
true, and thereby the legislature has made clear that it did
not intend to authorize an unconstitutional monopoly of a
stream. If, however, the available booming extent of a
stream be such as to reasonably prevent the operation of
more than one boom, the effect of a single location cannot
well be avoided. Such circumstances would not make a
monopoly authorized by law as such, but the location would
become the only one upon the stream by mere force of ne-
cessity. In any event, whatever may be the available boom-
ing extent of a stream, the legislature undoubtedly intended
that those who in good faith venture to spend their money

and become established as pioneers upon a stream shall be protected in the rights accorded them by virtue of their compliance with the location statute.  It must have intended that, in the consideration of these rights, reference must be had to enlarged commercial necessities and to consequent future demands for public service.  If the available extent of a river be such as to reasonably permit the operations of more than one boom company thereon, each will be protected in its location lawfully acquired, but prior rights must be protected.  It is possible for a booming company, in an effort to hold an entire stream, to spread its plat of location over the whole available booming space thereon.  If such were the manifest or apparent purpose, without regard to reasonable present and future necessities, it would be an attempted fraud against the state and the public which could not be upheld.  Such a purpose does not appear on the part of appellant.  Sufficient good faith appears to warrant its being protected in its location.  The court finds that appellant's contemplated extension cannot be made and operated by reason of respondent's boom.  The two cannot exist together. It follows that respondent is unwarrantedly interfering with appellant's location, and that in its booming operations the former must be restricted to territory outside of the latter's location.

We think the court erred in its conclusions of law.  The judgment is therefore reversed, and the cause remanded, with instructions to make conclusions of law and enter judgment in accordance with what has been herein said.

MOUNT, C. J., ROOT, CROW, DUNBAR, and RUDKIN, JJ., concur.