[No. 6815.  Decided March 28, 1908.]

Columbia Valley Railroad Company, *Appellant*, v.
Portland & Seattle Railway Company,
*Respondent*.[1]

Railroads—Location of Line—Public Lands—Conveyance from State—Description — Injunction — Trespass to Real Property—Evidence—Sufficiency.  Upon an issue, in an action to restrain a trespass, as to a conflict between the survey and location of rights of way of rival railroad companies, over lands applied for and purchased from the state, the plaintiff company fails to establish any legal or equitable rights to the defendant's location, where it appears that the plaintiff's line was actually located on the ground in dispute in 1899, but was erroneously described in its application and field notes, and the plaintiff purchased land from the state with reference to such erroneous description, which lay to the north of the actual survey and of defendant's location, that the plaintiff did not proceed with the construction of its road for seven years, or intend to do so in the near future, and that defendant in 1905 made its location and purchased its right of way, denying actual knowledge of the plaintiff's mistake, the stakes of plaintiff's survey being destroyed or only distinguishable with difficulty; although the contour of the ground admitted of only one practicable route.

Appeal from a judgment of the superior court for Skamania county, McCredie, J., entered December 14, 1906, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to enjoin the construction of a railway line across lands claimed as a right of way by another railway company.  Affirmed.

*W. W. Cotton, Coovert & Stapleton*, and *Ralph E. Moody*, for appellant.

*James B. Kerr* and *George T. Reid*, for respondent.

Fullerton, J.—The appellant and respondent are corporations, each having authority in virtue of its articles of incorporation to construct, maintain, and operate a railroad

[1]Reported in 94 Pac. 918.

along the north bank of the Columbia river where that river forms the southern boundary of this state. The appellant was incorporated in February, 1899, and the respondent in August, 1905. Immediately after its incorporation, the respondent began actively the work of construction, and to that end entered upon certain lands in section sixteen, in township one north, of range three west of the Willamette meridian, and began constructing a road bed and boring a tunnel through a promontory thereon. The appellant thereupon began this action to enjoin the respondent from so doing, alleging that the lands entered upon formed a part of its own right of way, and that the respondent had entered thereon without right.

The appellant bases its claim to the property upon both legal and equitable grounds. From the record it appears that, during the summer of 1899, it caused a line to be surveyed along the proposed route of its road, and in December of that year adopted the surveyed line as the line of definite location of its road. This line, as described and platted in the field notes and plats returned by its engineers, reported the line as crossing the boundary between sections 10 and 15 in the township and range above named, at a point 813 feet east of the corner to sections 9, 10, 15 and 16, from whence it proceeded in a southwesterly direction on stated courses and distances crossing the line between sections 15 and 16 at a point 631 feet south of the corner named, from whence it proceeded through section 16 on like stated courses and distances. Section 16 was originally school land belonging to the state of Washington. In April, 1901, the appellant applied to the board of state land commissioners to purchase a right of way over the section under the act of March 18, 1901. Laws 1901, p. 353. To that end it filed with its application, as required by the statute, a map showing the route of its proposed road together with the field notes of its definite location, which map and notes described the route of the road in the same manner that it was described in the field

notes of the survey originally returned by the engineers, and showed the ties to the section corner named as the same were thereon shown. The state had parted with its title to lot 4, in section 16, and the application to purchase was granted for all that part of the route lying west of lot 4. In making its application for a right of way to the state, however, the appellant did not file with the board of state land commissioners a copy of its articles of incorporation and due proofs of its organization thereunder, as required by the first section of the act of March 18, 1901, nor was the land sold pursuant to the law governing the public sale of state, school and granted lands.

The respondent located its road across the section in question in September, 1905, and in that month applied to purchase a right of way thereover under the act of March 18, 1901. Its map of definite location, and the field notes by which it was accompanied, showed that its line crossed the section line between sections 15 and 16 at a point 941.7 feet south of the corner to sections 9, 10, 15 and 16, and proceeded thence across the section on stated courses and distances that marked a line which lay wholly to the south of the appellant's survey and application. A certificate of purchase for a right of way over the tract was given it by the board of state land commissioners in the same month. Afterwards it brought condemnation proceedings and condemned a track seventy-five feet in width on each side of the center line of its road as surveyed. To this action, however, the appellant was not made a party.

After the respondent entered upon the ground and began its work of construction, the appellant resurveyed its line, when it found that the line as actually marked on the ground did not correspond with the field notes and maps returned by its engineers, but lay some three hundred feet to the south of the surveyed line, and almost entirely within the right of way conveyed to the respondent. There is some conflict in the evidence as to the condition of the markings on the ground at the time the respondent entered thereon. The appellant's

engineers who retraced the surveys testified to finding a num-
ber of the station stakes with the station marks still upon
them, and also that the transit hubs were in most instances
still in place.   One of the engineers testified, however, that
some five or six lines had been run over the same ground and
that they had difficulty in distinguishing between the hubs of
the appellant's line and those of the other surveys.   The re-
spondent, on the other hand, denies that any of its officers
or engineers had actual knowledge that the survey of the ap-
pellant's line deviated from the maps and field notes it had
adopted as the definite line of location of its proposed road
and filed in the office of the board of state land commissioners.
But it was made to appear that the contour of the ground for
the greater distance across this section was such that the only
practicable route for a road was at or near the line of the sur-
vey as actually made by the appellant and over which the re-
spondent was proceeding to construct its road.

On the foregoing facts appearing, the trial court held that
the respondent was the owner of the land in question, and that
the appellant had no title thereto, either legal or equitable, on
which it could maintain injunction.   It seems to us that this
conclusion is just.   Whatever may have been the intent of
the appellant, it is manifest that the state did not convey to
it the property which it now claims.   Conceding that it suffi-
ciently complied with the statute in making its application,
the tract applied for lies entirely to the north of the tract
claimed, and as this description is definite and certain, the
legal effect of the conveyance is to convey the tract described
and that tract only.

But the appellant insists that the line as actually sur-
veyed and marked on the ground must be taken as the true
line wherever there is a conflict between such line and the line
as described in the field notes and plats, and since the proofs
were clear that the respondent entered upon its surveyed line,
the trial court erred in failing to hold that there had been a
trespass.   It may be true that, had the appellant purchased its
right of way with reference to its surveyed line rather than

with reference to its map and field notes—that is, had it described its right of. way as so much land lying on each side of the line of its survey as marked and staked upon the ground, and taken a deed with such a description—it could properly contend that its true line was the line actually marked on the ground even though its maps and field notes showed a different line.  But it did not purchase with reference to such a description.  It purchased with reference to its maps and field notes without regard to the surveyed line— in effect, it described the land purchased by metes and bounds—and in determining its rights under its contract of purchase, it must be held to have purchased the land so described, not that actually surveyed.

It has been held, it is true, and it is perhaps the general rule, that when a railroad company in good faith surveys and locates a line of railway, and proceeds with reasonable diligence to procure a right of way thereover and to construct its road, the courts will protect its survey from the encroachments of another road.  But the rule can have no application here.  In so far as it is made to appear by this record, the appellant was not proceeding with the construction of its road, nor has it any intent or purpose to do so in the near future.  Its survey over this line was made nearly seven years before the respondent's entry; the stakes marking the same were in part destroyed; and it was only by taking the field notes and following the line with care that these remaining stakes could be located.  The appellant had, moreover, prepared and placed on the public records a map showing that its road did not trench on the ground here claimed, and we think it too much to say that the respondent, who is in good faith constructing a road, should be required to resort to condemnation proceedings and the payment of damages to the appellant before it will be permitted to continue its construction work.

The judgment is affirmed.

MOUNT, RUDKIN, and DUNBAR, JJ., concur.

HADLEY, C. J. and CROW, J., took no part.