OREGON-WASHINGTON R. & NAVIGATION CO. v. WILKINSON et al.
(SPOKANE, P. & S. RY. CO., Intervener).

(Circuit Court, E. D. Washington, E. D.   May 6, 1911.)

No. 1,379.

1. EMINENT DOMAIN (§ 194*)—PETITION—REQUISITES.

Under Rem. & Bal. Code Wash. § 921, providing that a condemnation petition shall set forth, among other things, the object for which the land is sought to be appropriated, failure of the petition to sufficiently allege such object is not a jurisdictional defect, but is curable by amendment.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 523; Dec. Dig. § 194.*]

2. EMINENT DOMAIN (§ 178½*)—ABATEMENT OF PROCEEDINGS—TRANSFER OF INTEREST.

Under Rem. & Bal. Code Wash. § 193, providing that no action shall abate by the death or disability of a party or by a transfer of any interest in the action if the cause of action survives, a transfer of the property of a railroad company to another did not abate condemnation proceedings instituted by the transferring company.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 486; Dec. Dig. § 178½.*]

3. EMINENT DOMAIN (§ 185*)—APPEARANCE—JURISDICTION.

Where intervener appeared in condemnation proceedings and invoked the jurisdiction of the court in a district other than that in which it resided, he could not thereafter object to the court's jurisdiction because there had been a change in the name of the petitioner without otherwise impairing or affecting the court's jurisdiction.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 499; Dec. Dig. § 185.*]

4. MONOPOLIES (§ 21*)—RIGHTS AND LIABILITIES—CONDEMNATION OF LAND.

The state having reserved to itself the right to determine when and under what circumstances a consolidation between railroads shall be permitted by Laws Wash. 1909, c. 196, it was no defense to proceedings to condemn land for a railroad right of way that petitioner was an illegal consolidation of two other railroads in violation of section 1 of that act.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig § 21.*]

5. EMINENT DOMAIN (§ 56*)—RAILROAD RIGHT OF WAY—CONDEMNATION—NECESSITY.

Where a railroad company authorized to condemn land seeks to condemn particular property for a right of way for terminal facilities, it was no answer, in the absence of fraud or bad faith, that there was no necessity for condemning the particular property because some other location might be made or some other property obtained by agreement which would answer petitioner's purpose.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 56.*]

6. EMINENT DOMAIN (§ 55*)—RIGHT OF WAY—LOCATION.

A railroad's right to condemn land for terminal facilities dates from the location and adoption of the land by the railroad company for that purpose.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 135; Dec. Dig. § 55.*]

7. EMINENT DOMAIN (§ 55*)—RIGHT OF WAY—TERMINAL FACILITIES—USE OF LAND.

Where, at the time petitioner's predecessor located and adopted certain land in controversy for terminal facilities, the land was the private prop-

erty of another railroad company, but was not then devoted to any public use and had not been during 10 or 12 years preceding, and there was nothing to indicate that the company owning the land intended to use it for public purposes at any time in the immediate future, if at all, the land was subject to petitioner's right to condemn as against the rights of another corporation attaching more than a year thereafter.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 135; Dec. Dig. § 55.*]

Condemnation proceedings on petition of the Oregon-Washington Railroad & Navigation Company, substituted for the North Coast Railroad Company, against Randolph A. Wilkinson, the St. Paul, Minneapolis & Manitoba Railway Company, the Great Northern Railway Company, and the Spokane, Portland & Seattle Railway Company, intervener. Decree for petitioner.

Danson & Williams and Hamblen & Gilbert, for petitioner.

F. V. Brown and Edward J. Cannon, for respondents.

Carey & Kerr, for intervener.

RUDKIN, District Judge. This is a proceeding to condemn certain real property for railroad purposes. The tract sought to be condemned lies immediately south of Ide avenue, in the city of Spokane, is approximately 1,100 feet in length, east and west, by 400 feet in width, north and south, and contains 11 $\frac{33}{100}$ acres. Ide avenue is a public street of the city, 50 feet in width, running south of and parallel with the tracks of the Great Northern Railway Company and about 100 feet distant therefrom, with a tier of lots used principally for warehouse purposes intervening. This tract, together with other lands, was acquired by the Great Northern Railway Company, or for its use and benefit, in the year 1896 or 1897; the date of the conveyance or the description of the other lands acquired not appearing in the record. It appears from the testimony, in a general way, that the land was originally acquired for Great Northern terminals in the city of Spokane; but, from the date of its acquisition until conveyed to the Spokane, Portland & Seattle Railway Company 11 or 12 years later, it was never used by the Great Northern Company for any public purpose, nor is there any testimony tending to show that that company intended to so use it within any reasonable period in the future, if at all.

In the year 1905 the Great Northern Railway Company and the Northern Pacific Railway Company organized the Spokane, Portland & Seattle Railway Company to construct a line of railway from the city of Spokane to the city of Portland by way of the Columbia river, for the purpose of relieving the congestion of traffic on the two old lines over the Cascade Mountains between Eastern and Western Washington. One-half of the stock in the new company is owned by each of the old companies, and the new company since its organization has been, and is now, under the joint management and control of the two parent companies. The new line to Portland was opened in the fall of 1908, and on or about the 11th day of November of that year the president of the Great Northern Railway Company and the president of the Northern Pacific Railway Company took up the ques-

tion of acquiring terminals for the new company in the city of Spokane. It was at that time agreed that the land in controversy should be conveyed by the Great Northern Railway Company, or its then holder, to the Spokane, Portland & Seattle Railway Company, for terminal purposes in the city of Spokane; but the consideration was not agreed upon until later, and the deed was not executed until the 17th day of November following.

In the early part of the year 1906, the North Coast Railroad Company was incorporated for the purpose of constructing a line of railroad between the cities of Spokane and Seattle, as well as branch lines between other points in the state of Washington. Some time prior to the 23d day of May, 1907, the tract in controversy was surveyed by the North Coast Railroad Company as a part of its terminals in the city of Spokane, and on the last-named date this survey was adopted by the board of trustees, and the proper officers of the company were authorized to acquire the land by purchase or condemnation. On the 24th day of September, 1907, the president of the North Coast Railroad Company informed the president of the Great Northern Railway Company of the selection of this tract, by letter, and took up with him the question of its purchase. On December 20, 1907, the president of the Great Northern Railway Company replied as follows:

"On September twenty-fourth last you wrote me a letter regarding some property in Spokane. I held your letter until I could make an effort to ascertain something definite as to the North Coast Railroad. Having been west and not having satisfied myself as to what interests you represent, I do not care to enter into any negotiations regarding any property. I always like to know what interests I am dealing with."

On the 24th day of September, 1908, the president of the North Coast Railroad Company again informed the president of the Great Northern Railway Company that his company was ready to take up the question of the purchase of this property, and asked him to fix the price at an early day. He was informed by the president of the Great Northern Railway Company in reply, under date of October 1, 1908, that the matter had been referred to Mr. Gilman, one of the company's attorneys at Seattle. The matter was then taken up with Mr. Gilman, but nothing was accomplished through these negotiations. The present proceeding was thereupon commenced in the superior court of Spokane county on the 14th day of November, 1908, by the filing of a petition and a notice of lis pendens. On the 19th day of December, 1908, the proceeding was removed to this court on the petition of the defendants, because of a diversity of citizenship. On the 8th day of March, 1909, the Spokane, Portland & Seattle Railway Company filed its petition in intervention in this court as the successor in interest to the Great Northern Railway Company, and asserted its right to retain the property by reason of its purchase from the Great Northern Railway Company and its subsequent adoption for railroad terminals in the city of Spokane.

Testimony was taken before Judge Whitson during April and May of 1909, and before the master in chancery during August of 1909; but no further steps seem to have been taken in the proceeding until

February of this year. In the meantime the North Coast Railroad Company and the Oregon Railroad & Navigation Company consolidated their lines and proposed lines in the state of Washington, under the name of Oregon-Washington Railroad & Navigation Company. The two consolidating companies conveyed all their property and property rights to the new company, and the new company was authorized by its board of directors to prosecute to final judgment all pending condemnation suits. Since the consolidation the old Oregon Railroad & Navigation Company lines have been known as the "First Division" and the old North Coast lines as the "Third Division" of the Oregon-Washington Railroad & Navigation Company. As soon as these conveyances became a matter of record, the intervener moved to dismiss the condemnation proceeding, on the ground that the petitioning company had parted with all interest in its former holdings, for want of prosecution, and on the further ground that the intervener had its principal place of business at Vancouver, in the Western district of Washington, and not at Spokane, in the Eastern district. On the other hand, the Oregon-Washington Railroad & Navigation Company moved that it be substituted as petitioner for and in the place of the original petitioner and as its successor in interest. The motion to dismiss was denied, leave to substitute was granted, and further testimony was taken on the questions of public use and public necessity. The case is now before the court for final determination on these preliminary questions.

Before taking up the merits of the case, however, I will advert briefly to some of the preliminary motions and objections interposed and to the rulings thereon.

[1] At the inception of the hearing before Judge Whitson an objection was interposed to the petition on the ground that it did not allege or show that the property was sought to be taken for a public use. This objection was sustained; but the petitioner was granted leave to amend, and the amendment was accordingly made. There was no error in this ruling.

Section 921, Rem. & Bal. Code, provides that any corporation authorized by law to appropriate land, real estate, premises, or other property, for right of way or any other corporate purposes, may present its petition to the superior court of the proper county, in which the land, real estate premises, or other property sought to be appropriated shall be described with reasonable certainty, setting forth the names of each and every owner, incumbrancer, or other person or party interested in the same, or any part thereof, so far as the same can be ascertained from the public records, the object for which the land is sought to be appropriated, and praying that a jury be impaneled to ascertain and determine the compensation to be made in money. The petition in this case alleged that the petitioner was authorized by law to appropriate lands, real estate premises, and other property, for corporate purposes, described the land sought to be taken with reasonable certainty, set forth the names of the owners and parties in interest as required, and the object for which the land was sought to be appropriated. If it be conceded that the statement of the object for

which the land was sought to be appropriated was deficient, the defect was not jurisdictional and was curable by amendment. Rem. & Bal. Code, § 303; State ex rel. Merriam v. Superior Court, 55 Wash. 64, 104 Pac. 148.

[2] Nor did the action abate by reason of the transfer made by the original petitioner to the Oregon-Washington Railroad & Navigation Company while the action was pending. Section 193, Rem. & Bal. Code, provides that:

"No action shall abate by the death, marriage, or other disability of the party, or by the transfer of any interest therein, if the cause of action survive or continue; but the court may at any time within one year thereafter, on motion, allow the action to be continued by or against his representatives or successors in interest."

This section has been construed to extend to and include condemnation proceedings. California Central R. R. Co. v. Hooper, 76 Cal. 404, 18 Pac. 599; Bradley v. Northern Pac. Ry. Co., 38 Minn. 234, 36 N. W. 345.

[3] The motion to dismiss for want of prosecution was not urged in argument, and the motion based on the residence or place of business of the intervener is not well taken. The intervener appeared in the Eastern district and invoked the jurisdiction of the court, and is now in no position to object to that jurisdiction simply because there has been a change in the name of the petitioner without otherwise impairing or affecting the jurisdiction of the federal court.

[4] On the final argument of the case it was urged that the consolidation of the properties of the Oregon Railroad & Navigation Company, and the North Coast Railroad Company, violates section 16 of article 12 of the state Constitution, which declares that "no railroad corporation shall consolidate its stock, property or franchises with any other railroad corporation owning a competing line," and section 1 of the act of March 18, 1909 (Laws of Washington 1909, p. 698), which contains a similar prohibition. I doubt very much whether these two companies owned competing lines, within the meaning of these provisions; but upon that question I express no opinion, for I am satisfied that the question of their violation cannot be raised by a private property owner in a condemnation proceeding. The section of the act of 1909, above cited, provides, among other things, that "any such consolidation shall be approved by the State Railroad Commission." The state thus reserved to itself the right to determine when and under what circumstances a consolidation should be permitted, and did not leave the question of the enforcement of the Constitution or the statute to private individuals or rival corporations. Leavenworth County v. Chicago, etc., Co., 134 U. S. 688, 10 Sup. Ct. 708, 33 L. Ed. 1064; Rogers v. Nashville, etc., Co., 91 Fed. 299, 33 C. C. A. 517; Jones v. Missouri, etc., Co. (C. C.) 135 Fed. 153; Weed v. Gainesville, etc., Co., 119 Ga. 576, 46 S. E. 885; Phinizy v. Augusta, etc., Co. (C. C.) 62 Fed. 678; Bell v. Pennsylvania, etc., R. Co. (N. J.) 10 Atl. 741.

In Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950, Oregon Ry. Co. v. Oregonian Ry. Co., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed.

837, Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, and East St. Louis Connecting Ry. Co. v. Jarvis, 92 Fed. 735, 34 C. C. A. 639, cited by the intervener, the actions were brought on written contracts or leases, the consideration for which was a void or illegal transfer or lease, and of course it was open to the defendants to challenge the legality or validity of the contract in suit. These cases are no authority for the broad proposition that a stranger to such a contract may raise the objection in a collateral proceeding.

[5] The final question in the case is: Is the petitioning company entitled to appropriate this land at all, and, if so, is it so entitled against the claims of the intervener. The testimony on this branch of the case covers a wide range, and I have neither the time nor the disposition to review it at length. As I view the law, much of it relates to matters which are not proper subjects for judicial cognizance —at least, in the absence of fraud or bad faith. Whether there is need for another railroad in the territory traversed by the old North Coast lines; whether a railroad company should maintain its make-up and break-up yards within or without the city limits; whether it should have one or two freight terminals or freight yards; and whether its terminals and freight yards should be connected or disconnected—are all questions which the company must ordinarily determine for itself, for, if a private individual or another railroad corporation whose property is sought to be taken be permitted to determine these questions for it, nothing but confusion can follow, and railroad construction will become well-nigh impossible.

"It may be objected that there is no necessity for condemning the particular property, because some other location might be made or some other property obtained by agreement. But this objection is unavailing. Except as specially restricted by the Legislature, those invested with the power of eminent domain for a public purpose can make their own location according to their own views of what is best or expedient, and this discretion cannot be controlled by the courts." 1 Lewis on Eminent Domain, § 393.

This rule prevails in this state, notwithstanding the fact that the question of necessity is submitted to and determined by the courts under the state statutes. Samish River Boom Co. v. Union Boom Co., 32 Wash. 600, 73 Pac. 670; State ex rel. Kent Lumber Co. v. Superior Court, 46 Wash. 520, 90 Pac. 663; State ex rel. Milwaukee Terminal Co. v. Superior Court, 54 Wash. 365, 103 Pac. 469, 104 Pac. 175.

I will say in conclusion that I find from the testimony that there is reasonable necessity for the condemnation and appropriation of this property on the part of the petitioning company, and that the property is not exempt from condemnation by reason of anything contained in the petition in intervention or in the proofs offered in its support.

[6] The North Coast Railroad Company located and adopted the land for terminal purposes in May, 1907, and its claim or right relates back to that date. Nicomen Boom Co. v. North Shore, etc., Co., 40 Wash. 315, 82 Pac. 412; Columbia Valley R. R. Co. v. Portland & Seattle R. Co., 49 Wash. 88, 92, 94 Pac. 918; State ex rel. Kettle

Falls, etc., Co., v. Superior Court, 46 Wash. 500, 506, 90 Pac. 650; State ex rel. Cascade, etc., Corp. v. Superior Court, 53 Wash. 321, 101 Pac. 1094; Mills, Eminent Domain (2d Ed.) § 4.

[7] At that time the property sought to be taken was the private property of the Great Northern Railway Company. It was not then devoted to any public use, had not been during the 10 or 12 years preceding, and, as heretofore stated, there is nothing in the testimony to indicate that that company intended to use it for public purposes at any time in the immediate or near future, if at all. In fact, the testimony indicates rather the contrary. The rights of the intervening company did not attach until as late as November 11, 1908. The property cannot be used by both corporations for the same purpose. There is no controlling necessity which would warrant the court in taking the property from the company having the prior right and awarding it to the other. And the prayer of the petition should therefore be granted.

Let an order be entered accordingly.