## Garrie S. French v. The Commercial National Bank et al.

1. EQUITY PLEADINGS—*Sufficient Allegations of a Sheriff's Return in a Creditor's Bill.*—The allegation that " he, said sheriff, therefore returned the same no property found and no part satisfied, as by said writ of execution and the return of the said sheriff indorsed thereon as aforesaid, now on file in the office of said Superior Court, will more fully appear, and to which, or to a copy thereof, your orator prays leave to refer," is a sufficient allegation of a return *nulla bona,* to give the court jurisdiction to entertain a creditor's bill.

2. EQUITY PRACTICE—*A General Prayer for Relief.*—A prayer in a bill " that the defendants stand to, abide by, and perform such order and decree as to the court shall seem agreeable to equity and good conscience," is in substance a prayer for general relief, and will justify the court in giving any relief which is consistent with the allegations of the bill and warranted by the proof.

3. SAME—*Return Nulla Bona, When an Unnecessary Allegation.*—In a bill to set aside a fraudulent conveyance, a return of the execution *nulla bona* is unnecessary to give the court jurisdiction.

4. REMEDIES—*A Party Must Appeal—He Can Not Stand in Defiance of the Court.*—If a court has jurisdiction of the parties and authority to render an order, a party can not stand in defiance of it, however improvidently or erroneously made.

5. CONTEMPTS—*Of Court—Obedience to be Enforced.*—In order to

enforce obedience a court may imprison or fine an offender, or do both, as to it, under all the circumstances, seems just, and best calculated to compel obedience.

6. Same—*Where the Act Is Not Willful.*—Where the act of contempt does not appear to be at all willful or defiant, but merely the exercise of a supposed right, under advice taken and given in good faith, it does not deserve severe punishment as such, but the party offending should make his adversary whole as to the damages sustained thereby.

7. Same—*Excessive Fines.*—The court holds that in this case a smaller fine or imprisonment alone would have been sufficient to enforce obedience to the order in question and to maintain the dignity of the court, and for that reason reverses the order imposing the fine and remands the cause for further proceedings not inconsistent with this opinion.

**Proceedings for Contempt.**—Appeal from the Superior Court of Cook County; the Hon. Henry V. Freeman, Judge, presiding. Heard in this court at the March term, 1898. Reversed and remanded with instructions. Opinion filed December 6, 1898.

## Statement of Case.

Appellee, the Commercial National Bank, having obtained a judgment against George A. Leslie, and return of an execution issued thereon *nulla bona,* filed a creditor's bill, which, besides the usual allegations in a creditor's bill (including the allegation of issuance and return *nulla bona* of execution), charged in substance a conspiracy (setting forth the details) between Leslie, his wife, one Miller and appellant, to defraud the bank and other creditors of Leslie; that pursuant to such conspiracy and an agreement in writing, appellant came into possession of a large amount of property belonging to Leslie, which appellant claimed as his own, and also claimed that Leslie had assigned to appellant a large amount of book accounts and debts due to Leslie, which assignment was alleged to be fraudulent.

On the same day the bill was filed, appellee McKey was appointed receiver of the property and effects of Leslie, and he and the other defendants were ordered to appear before a master and to submit to an examination, under oath, concerning the property and effects of Leslie, and to turn over to the receiver all property, choses in action and effects of Leslie.

Answers were filed by Mrs. Leslie and appellant, by which they neither admit nor deny the allegations of the bill as to recovery of judgment, issue and return of execution, but denying all the allegations as to the conspiracy alleged by the bill, and averring that the property in French's hands, alleged to be the property of George A. Leslie, was not his property, but was held in trust by French for Mrs. Leslie and Miller.

Thereafter, on March 9, 1897, the master made a preliminary report, finding certain things from the evidence so far taken before him, and also a further report that French, although served with a subpœna in apt time to appear before the master at 2 P. M., on March 2, 1897, at his office, failed to appear at said time and place, as commanded by the subpœna.

May 21, 1897, the master, from evidence taken, reported, among other things not material to be considered, in substance, that the claim of French to hold the property in question in trust for Mrs. Leslie and Miller, was fraudulent, except to the extent of $1,000 in favor of Miller and $627 in favor of Mrs. Leslie, and also that the assignment to French by Leslie of his book accounts and choses in action, was a fraud on Leslie's creditors. The master, by this report, gave no opinion as to the question of jurisdiction, which was raised because of the manner of return of execution in favor of the bank, but referred the same to the court.

Objections to the report were filed May 25, 1897, by Mrs. Leslie, and by appellant August 31, 1897, but Mrs. Leslie's objections to the report were withdrawn August 27, 1897, and she then consented to the approval of the report.

There appears to have been a partial hearing of the cause on May 27, 1897. The complainant in the bill offered in evidence the execution against Leslie in favor of the bank, together with the sheriff's return thereon. The return is, viz.:

"The within named defendant not found and no property of the within named defendant found in my county on which to levy this writ; I therefore return the same, no

property found, and no part satisfied, this 18th day of February, 1897.

JAMES PEASE, Sheriff.
. By A. D. DELUE, Deputy."

The execution also had on it the following indorsement, viz.:

" The sheriff will return the within execution no part satisfied, forthwith, dated February 18, 1897.

SLEEPER, McCORDIC & BARBOUR."

Sleeper, McCordic & Barbour were then the bank's attorneys.

There was also on said hearing evidence offered by complainant, against the objection of appellant, tending to show that the deputy sheriff had in fact made a demand upon Leslie on this writ to turn out property, and also on other writs; that he had, under other writs, sold all the property of Leslie of which he, the deputy sheriff, had any knowledge, and had actually written said return before the order for return was received from the bank's attorneys.

September 1, 1897, appellant filed a supplemental answer, in which, among other things, he avers that the cause, on the master's report and objections of Mrs. Leslie, was argued, written briefs submitted, and the cause taken under advisement by the court, and that complainant, or its solicitor, had in some way been advised that the decision of the court would be adverse to it, and would result in the dismissal of complainant's bill; that he had acted in good faith under the trust agreement between him, Mrs. Leslie and Miller; had expended large sums of money; that complainant's solicitor and others had fraudulently combined together, and by false representations induced Mrs. Leslie to withdraw her objections to the master's report, and to consent to its confirmation, and that their purpose was to defeat the said trust and have it declared void.

After replications to the several answers were filed, the cause was then, September 21, 1897, referred to another master to take proofs upon all the pleadings, and also as to any and all moneys, property and effects that came into the

hands or "is now in the hands" of appellant, under and by virtue of a certain trust agreement between him, Mrs. Leslie and Miller, dated February 8, 1897, and also an assignment of accounts of same date by Leslie.

The master is also ordered to take proofs as to any and all other property now and at any time heretofore belonging to said George A. Leslie, which has come into the possession, charge or custody of said Garrie S. French, and to hear and take proofs of the value of said property, transferred by said George A. Leslie to said Garrie S. French, as trustee, or otherwise, and said Garrie S. French is ordered to account before said master for any and all property, and the proceeds thereof, which came into his possession, charge or custody under and by virtue of the aforesaid trust agreement and assignment of accounts. And said Garrie S. French is to submit to an examination before said master, concerning the property and effects of every kind received by him from said George A. Leslie under said trust agreement and assignment of accounts, and also his acts and doings in the premises.

Said master shall hear and take proofs as to any and all disbursements and expenditures made by said Garrie S. French and any and all charges incurred by him as trustee. And upon the taking of such proofs and evidence, the said master is ordered to turn the same into court, together with his conclusions thereon.

Pursuant to this order, the master entered a rule on appellant to appear before the master October 1, 1897, at 2 o'clock, P. M., and submit to an examination under oath as required by the said order of the court. Appellant failed to appear in person before the master at said time, but appeared by his solicitor, who argued before the master that the court had no jurisdiction to enter said order, and appellant, by the advice of his counsel, declined to appear before the master and submit to an examination.

October 6, 1897, the court entered a rule on appellant to show cause, at 10 A. M., October 12, 1897, for his failure to appear before the master, to which rule appellant filed his

answer, under oath, October 11, 1897, setting up and claiming the protection of the constitutional provision against unreasonable searches, seizures, etc., and that the order of the court is a violation of this provision of the Constitution, also a violation of Sections 2 and 6, Art. 2, of the State Constitution; also that the court had no jurisdiction to make the order, because the bill failed to show a compliance with Section 49, Ch. 22 of Rev. Stats. of Illinois, and that for various other reasons, which we think it is unnecessary to enumerate (because they only tend to show that the order of the court was erroneous), the court was without power to make said order.

In the hearing of the proceedings for contempt, the court appears to have acted with great care and deliberation, the matter being heard on six different days, during which time the court saw and considered all the pleadings in the cause, the evidence taken before and the different reports of the masters filed, and also considered all the evidence and pro-ceedings theretofore taken and orders entered in the cause, as well as the arguments of counsel, and found a state of facts (which it is unnecessary to enumerate) establishing the jurisdiction of the court to make the order of September 21, 1897, and also that appellant had refused to obey such order, and persisted in such refusal, though he was given full opportunity to comply therewith, and thus purge himself of contempt, up to the time of the entry of the order fining and committing appellant to jail, as below stated. October 19, 1897, the court, appellant in person and by his counsel, being present, entered an order which, after various recitals and findings hereinabove referred to, proceeds, viz:

" And the court further finds that said Garrie S. French has not turned over to Edward B. McKey, receiver in this cause, any money, property or effects of any kind whatso-ever; that said Garrie S. French has refused to obey the order heretofore entered in any particular, and has refused to obey the rule entered on him by Alexander F. Stevenson, of which rule he had due and timely notice. Which rule required the said Garrie S. French to appear before said Alexander F. Stevenson October 1, 1897, at two o'clock

· P. M., to submit to an examination under oath in accordance with the order entered in said court on September 21, 1897. Said Garrie S. French, now present in open court, being interrogated by the court as to whether he will proceed before the said master and submit to an examination and in all other respects obey the said order of September 21, 1897, still refuses to obey the said order of September 21st, and to submit to an examination under oath, before said Alexander F. Stevenson, or to make further answer or account of property in his hands, received by him under the said agreements of February 8, 1897; he is therefore adjudged and decreed to be in contempt of this court, and is fined the sum of $500, to be aipd to Edward B. McKey, receiver of George A. Leslie, heretofore appointed in the above entitled cause. And is further ordered to stand committed to the common jail of the county of Cook and State of Illinois, to answer for his contempt, and to there remain in custody until he complies with the order of this court heretofore entered on September 21, 1897, to appear before Alexander F. Stevenson, and submit to an examination under oath, as directed under said order, and also to account to the said master for his acts and doings as trustee under the agreements of February 8, 1897, aforesaid, and further complies with the said order of September 21, 1897, in all respects as he is therein commanded, or until the further order of the court."

From this order appellant appealed, which was granted on condition that he give bond in the sum of $10,000, with sureties to be approved by the court, conditioned to pay all damages which might be occasioned by reason of his refusal to obey said order of September 21, 1897.

GAGE & DEMING, S. A. FRENCH and C. STUART-BEATTIE, attorneys for appellant.

JAMES J. BARBOUR, attorney for appellees.

The averments of the bill, and also the proofs produced, show that the complainant has done its duty in having execution issued and placed in the sheriff's hands, and efforts by the sheriff to find property proving fruitless, having the execution returned "No property found and no part satisfied." Ill. R. S., Chapter 22, Section 49; Am. & Eng. Ency.

of Law, Vol. 4, 574; Scheubert v. Honel, 152 Ill. 315; Stirlen v. Jewett, 165 Ill. 410; Huntington v. Metzger, 158 Ill. 272.

The bill being brought for the purpose of setting aside a fraudulent conveyance, the return of an execution is not necessary to the giving of jurisdiction to the court. Comstock v. Baldwin, 169 Ill. 636, and cases there cited.

The bill being also filed for the purpose of obtaining control of a trust fund, created, as subsequently revealed by the evidence, for the purpose of paying all of the creditors of the defendant debtor, equity will take jurisdiction without the return of an execution. Russell v. Chicago Trust & Savings Bank, 139 Ill. 538; Comstock v. Baldwin, 169 Ill. 636.

The order of a court having jurisdiction over the parties is to be obeyed, no matter how erroneous. And a court may order parties in possession of property sought to be reached by a creditor's bill to turn the same over to a receiver, and to submit to an examination under oath as to such property. Leopold v. The People, 140 Ill. 558; Tolman v. Jones, 114 Ill. 153.

The proceeding being civil and not criminal, is coercive and for the benefit of the complainant, and the fine imposed may properly go to complainant as indemnity for injuries suffered. Lester v. People, 150 Ill. 424; People v. Diedrich, 141 Ill. 665; Buck v. Buck, 60 Ill. 105; Smith v. Tenney, 62 Ill. App. 576; 4 Ency. of Pl. and Pr. 800; Hawley v. Bennett, 4 Paige, 165; Albany City Bank v. Schermerhorn, 9 Paige, 374; Rogers v. Paterson, 4 Paige, 453.

Mr. Presiding Justice Windes delivered the opinion of the court.

Numerous errors are assigned and divers contentions are made by counsel as to why the order fining and committing appellant to jail is erroneous, but it seems unnecessary to consider but two questions: first, whether the court had jurisdiction to make the order September 21, 1897, there being no question made as to the jurisdiction of appellant's person; and second, if the court had jurisdiction to make the

last mentioned order, then was the punishment imposed on appellant unreasonable and excessive.

1st. The allegation of the bill as to the return on the execution is that the sheriff "returned said writ of execution to this court, the said return stating, in effect, that the said sheriff had been unable to satisfy said writ of execution and was unable to find any property in Cook county on which to levy the writ, and he, said sheriff, therefore returned the same no property found and no part satisfied, as by said writ of execution and the return of the said sheriff indorsed thereon as aforesaid, now on file in the office of said Superior Court, will more fully appear, and to which, or to a copy thereof, your orator prays leave to refer."

This was a sufficient allegation of a return *nulla bona*, if any such allegation were necessary, to give the court jurisdiction to entertain the bill as a creditor's bill. Russell v. C. T. & S. Bk., 139 Ill. 550; Huntington v. Metzger, 158 Ill. 272–83; Stirlen v. Jewett, 165 Ill. 410–15.

If it be necessary that the proof, it having been taken and being before the court, sustain this allegation and the jurisdiction of the court, as contended by appellant, we are inclined to the view that the proof is sufficient in that regard, that the sheriff did his duty, and that complainant had exhausted its legal remedy before filing the creditor's bill. The bill, however, may be considered as one seeking to set aside a fraudulent conveyance. It alleges a fraudulent conveyance by Leslie of his property to French and prays, among other things, that the defendants stand to, abide by, and perform such order and decree as to the court shall seem agreeable to equity and good conscience. This is in substance a prayer for general relief, and would justify the court in giving any relief which is consistent with the allegations of the bill and warranted by the proof. Lane v. Union National Bank, 75 Ill. App. 299, and cases there cited.

The bill being one to set aside a fraudulent conveyance, a return of the execution *nulla bona* was unnecessary to give the court jurisdiction, and therefore that allegation

may be considered as surplusage.    First Nat. Bank v. Chapman, 77 Ill. App. 105, and cases cited; Lane case, *supra*, and cases cited.

The court then having jurisdiction, it had the power to make the order of September 21, 1897, and appellant should have obeyed the order, however erroneous it might be, and if erroneous, which we do not hold, and the court refused on application to modify it, resorted to his right of appeal, after a final hearing to correct any supposed errors of the chancellor.    Tolman v. Jones, 114 Ill. 153; Leopold v. People, 140 Ill. 558.

In the latter case the court say:    "If the court has jurisdiction of the parties and legal authority to render the order, then a party can not stand in defiance of it, however improvidently or erroneously made."

2d.    Was the punishment imposed unreasonable and excessive?    In the Leopold case, *supra*, the proceeding had and order made were somewhat similar to the case at bar, but the fine imposed was $200, and defendant was ordered to stand committed until the fine was paid, unless sooner discharged by order of the court, and it was contended that the punishment should have been confined to imprisonment alone.    The court said that in order to enforce obedience, the court below "might imprison or fine the offender, or do both, as to it, under all the circumstances, seemed just, and best calculated to compel obedience.  There was no abuse of that power in this case."

In the Tolman case, *supra*, the punishment was by imprisonment only, the time not appearing, for a deliberate contempt of Tolman in refusing to execute an assignment of certain property in his possession to a receiver.

In Miller v. People, 10 Ill. App. 400, a fine of $250 was held to be excessive for a contempt of court, it being committed without evil motive or design.

In Berkson v. People, 51 Ill. App. 105, in which Berkson was found guilty of contempt in not having truthfully discovered his assets, books of account, etc., to a receiver, the court finding that he had not accounted for at least $7,500

in money in his possession, which he refused to turn over to the receiver, the punishment was imprisonment only.

In Parsons v. People, 51 Ill. App. 467, the appellant was ordered imprisoned for contempt of court in violating an injunction, the act being done under advice of counsel, who testified that in his judgment it was not a violation of the injunction; it was held that appellant should have been discharged instead of being committed to jail.

In Rapalje on Contempt, Sec. 49, it is stated, speaking of civil contempt, that " where the act of contempt does not appear to be at all willful or defiant, but merely the exercise of a supposed right, under advice taken and given in good faith, it does not deserve punishment as such, but the party should make the complainant whole as to the damages sustained thereby." The cases cited support the statement of the author.

The case of Becker v. People, 156 Ill. 309, cited by appellees, in which a fine of $1,000 was imposed for unlawfully usurping the functions of justice of the peace, and held not to be excessive, is in no respect analogous to the case at bar, because, as the court said, the defendant acted wholly without color of office, and it was difficult to estimate the harm that might be done to individuals and the public by his assuming to perform judicial and other official acts, which must be held to be simply void.

In the case at bar appellant declined to obey the court's order, acting under the advice of counsel, both he and his counsel presumably acting in good faith and with the honest belief that the court was without jurisdiction. This should have caused the chancellor to hesitate before entering an order imposing absolutely so large a fine in addition to imprisonment, when a smaller fine or imprisonment· alone would have just as fully maintained the dignity of the court and have quite as effectually enforced obedience to the court's order. The evidence in the record tends quite strongly to show that appellant had been engaged in a fraudulent transaction, and therefore did not act in entire good faith in refusing to obey the court's order; but only

for the purpose of hindering and delaying complainant in the collection of its judgment, and retaining in his control Leslie's property. No doubt the learned chancellor must have been so impressed or he would not have imposed a fine larger than complainant's judgment, and also imprisonment, and required appellant to give a bond of $10,000 as a condition of appeal from the contempt order, but we are of opinion that a smaller fine or imprisonment alone would have been quite as sufficient, not only to enforce obedience to the court's order, but to maintain its dignity, and for that reason the order of commitment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. Reversed and remanded.