# CASES

# SUPREME COURT

OF

# WASHINGTON

[No. 7512. *En Banc.* July 26, 1909.[1]]

THE STATE OF WASHINGTON, *on the Relation of Nicomen Boom Company, Appellant,* v. NORTH SHORE BOOM AND DRIVING COMPANY *et al., Respondents.*[2]

APPEAL—DECISIONS REVIEWABLE—DISMISSAL OF CONTEMPT PROCEEDINGS. No appeal lies from an order purging a party of contempt in so far as an attempt is made to impose a fine and imprisonment on a charge of contumacy affecting the dignity and processes of the court only.

SAME—CIVIL CONTEMPT—DAMAGES. Under Bal. Code, § 5811, providing for an appeal in contempt proceedings "in like manner and like effect as from judgment in an action," appeal lies from the dismissal of a contempt proceeding seeking an award of damages resulting to private interests from the violation of a judgment of the court.

JUDGMENTS—VALIDITY—COLLATERAL ATTACK. A judgment entered by the lower court after remand of the case on appeal, upon determination of the prior right to booming privileges, cannot be collaterally attacked or disregarded because of error in fixing the boundaries of the boom grounds; since that question was within the jurisdiction of the court to decide.

CONTEMPTS—VIOLATION OF JUDGMENT—CIVIL REMEDIES—DAMAGES FOR LOSS. Under Bal. Code, § 5807, providing that in contempt proceedings the court may give judgment to indemnify an aggrieved party, in addition to the punishment imposed, the court should award damages in a proceeding for contempt for the violation of a judgment.

[1]NOTE: This case withheld from publication pending rehearing. REP.

[2]Reported in 103 Pac. 426.

SAME—APPEAL—SUPERSEDEAS. A party is guilty of a technical contempt in violating a judgment pending an appeal which was either abandoned or dismissed for want of jurisdiction, and is liable to the aggrieved party to the extent of the loss sustained, notwithstanding the appeal was prosecuted in good faith under an order and bond superseding the judgment pending the appeal.

APPEAL—SUPERSEDEAS. Where an appeal or writ of review from the state court to the Federal court is either abandoned or dismissed for want of jurisdiction, it is not superseded by an order allowing a supersedeas and a bond given therefor.

STATUTES—CONSTRUCTION—MAY AND SHALL—CONTEMPT. A statute providing that the court "may" award damages for a civil contempt in addition to punishment, being remedial in its nature, will be construed to mean "shall," where the aggrieved party asks for and is willing to take the same in such proceeding in lieu of an ordinary action.

CONTEMPT—CIVIL OR CRIMINAL—INDEMNITY. Where contempt in the violation of a court order is not willful or defiant, but an exercise of a supposed right, done in good faith by advice of counsel, the party will not be punished as for a direct or criminal contempt, but as for a civil contempt, and he may, pursuant to statute, be required to indemnify the other party.

CONTEMPT—CIVIL CONTEMPT—AGAINST WHOM AWARDED—ATTORNEY FOR PARTY. The power to award indemnity for a civil contempt resting entirely upon statute, Bal. Code, § 5807, authorizing the court to give judgment that the party aggrieved recover of the defendant a sum sufficient to indemnify him, does not authorize a judgment against the attorney for a defendant corporation who was a stockholder and advised the act which resulted in a contempt by the corporation and its officers, where the attorney acted in good faith (MOUNT and DUNBAR, JJ., dissenting).

SAME—CIVIL AND CRIMINAL CONTEMPT. A civil judgment for contempt for violating an order of the court may be granted, although no criminal contempt was committed.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered January 23, 1908, upon findings in favor of the defendants, in contempt proceedings, after a trial on the merits before the court without a jury. Reversed.

*W. W. Cotton, Welsh & Welsh,* and *James G. Wilson,* for appellant.

*Chas. E. Miller* and *W. H. Abel,* for respondents.

CHADWICK, J.—This proceeding was instituted by relator, the Nicomen Boom Company, in whom the right of booming logs in the North river in Pacific county, Washington, has been adjudged by this court to be.   The parties are not strangers to this court; consequently a rehearsal of the differences arising between them in their efforts to have determined the prior rights of boomage under the state law in North river is not now necessary.   Reference to the cases of *Nicomen Boom Co. v. North Shore Boom etc. Co.*, 40 Wash. 315, 82 Pac. 412; *North Shore Boom etc. Co. v. Nicomen Boom Co.*, 52 Wash. 564, 101 Pac. 48, and *State ex rel. North Shore Boom etc. Co. v. Nicomen Boom Co.*, 53 Wash. 499, 102 Pac. 394, will be sufficient.

From the judgment of this court, entered on the 6th day of December, 1905, the respondent, North Shore Boom & Driving Company, prosecuted an appeal to the supreme court of the United States.   To secure its rights pending the appeal, it obtained an order fixing a supersedeas in the sum of $10,000.   This order was made on the 17th day of January, 1906.   The North Shore Boom Company has operated its booms in defiance of the rights of the relator.   On the 13th day of March, 1907, the North Shore Boom Company, conceiving that its appeal might not be effectual in that it might be determined that an appeal would not lie from the judgment of this court, or if the supreme court of the United States should hold that its attempted removal of the case to the Federal court was in fact a proceeding by writ of review in that it asked for a review of the judgment of the superior court rather than of this court, sued out a writ of review, upon which a supersedeas was fixed in the sum of $20,000. Thereafter, the first appeal or writ (whichever it may be called is not now material) was dismissed in the supreme court of the United States upon motion of the respondent, the North Shore Boom Company.   The last proceeding went to final hearing, and was determined on the 23d day of February, 1909.   The court refused to consider the merits of the

controversy, and dismissed the writ for the want of juris-
diction, holding that no Federal question was involved. *North
Shore Boom & Driving Co. v. Nicomen Boom Co.*, 212 U. S.
406, 29 Sup. Ct. 355, 53 L. Ed. 574.

Pending these attempts to review the judgment of the
state courts, respondent proceeded with its booming opera-
tions in the North river. Acting upon the assumption that
the first attempt to appeal was ineffectual for any purpose
and that the second attempted review was insufficient to con-
fer jurisdiction on the Federal courts or to warrant a super-
sedeas, relator instituted this proceeding, setting up the facts
in detail as we have briefly outlined them, and praying for an
order adjudging respondent guilty of contempt; that its
officers and stockholders be fined in the sum of $300 each,
and imprisoned for a period of six months, and that it recover
the sum of $27,000, alleged to be the damages sustained by
reason of the unwarranted interruption of its booming priv-
ileges. Respondents, upon rule to show cause, set up the two
supersedeas orders and the proceedings in the Federal court
in justification of its conduct. After trial, the court found
that the respondent had not been guilty of contempt, the
real basis for this finding being that respondent, The North
Shore Boom Company, was operating under a supersedeas
issued by this court.

Respondents have moved to dismiss the appeal, upon the
ground that no appeal lies from an order purging a respond-
ent in contempt proceedings. This rule would no doubt pre-
vail in all cases where a party was cited to answer to a charge
of contumacy affecting the dignity and ordinary processes
of the court, and will be now followed by us in so far as the
attempt to impose a fine and imprisonment on respondents is
concerned. But the law of this state goes further than the
rules of the common law governing contempts, and in cases
of this kind permits the award of damages resulting to the
private interest affected by the order of the court which has
been disregarded and set at naught. It is a *quasi* civil action

and, when so regarded, either party aggrieved has the right
of appeal. It is even expressly provided in the chapter on
contempts and their punishments, Bal. Code, § 5811 (P. C.
§ 1480), that an appeal will lie "in like manner and with like
effect as from judgment in an action." The distinction as
well as the rule governing this class of cases is well stated in
the case of *Morgan's Sons Co. v. Gibson*, 122 Fed. 420, 423:

"It is a well-known fact, to which allusion has twice been
made in decisions of this court (*In re Reese*, 47 C. C. A. 87,
90, 107 Fed. 942, 945; *In re Nevitt*, 54 C. C. A. 622, 117
Fed. 488, 458), that contempts of court are of two kinds—
those that are prosecuted to punish persons for showing dis-
respect to the courts, either by offensive conduct in their
presence or by setting their authority at defiance, in the
prosecution of which the entire public is immediately inter-
ested because the welfare of the courts is concerned; and
those contempt proceedings that are inaugurated at the in-
stance of some private litigant or litigants to compel obedi-
ence to an order or decree made in the case for the protection
of their individual rights. In the latter class of cases the
public at large is not directly interested. The proceeding
does not partake of the character of a public prosecution at
the instance of the state, as for a crime committed in setting
the authority of its courts at defiance, but the proceeding is
rather of a civil or remedial nature, for the benefit of a par-
ticular individual or individuals whose rights cannot be other-
wise preserved. The distinction between the two kinds of con-
tempt has been recognized in other cases. *People etc. v. Died-
rich*, 141 Ill. 669, 670, 30 N. E. 1038, and cases cited. The
case in hand is obviously a contempt proceeding of a civil
and remedial nature as distinguished from one of a public or
criminal character. The public had no special concern in the
question whether the appellee had used words on his labels
which violated the injunction, but the appellant was deeply
interested in that question, since, if the charge was true, it
affected a property right which he had succeeded in estab-
lishing. Moreover, if that right was being invaded by the
appellee, notwithstanding the decree, the court which entered
the decree could with no greater propriety refuse relief when
the fact was called to its attention by the appellant, than it
could withhold an execution to collect a judgment which it

had rendered. We are of opinion, therefore, that the final action of a court in such a case as the one at bar, whether it be an order discharging the rule to show cause or one imposing a fine tantamount to the injury that has been sustained by the complaining party, is subject to review, and that in equity cases like the one at hand, where the object is to enforce the provisions of a final decree and compel obedience thereto, the remedy is by such an appeal as was taken."

See, also *Vilter Mfg. Co. v. Humphrey*, 132 Wis. 587, 112 N. W. 1095, 13 L. R. A. (N. S.) 591; *State ex rel. Denham v. Superior Court*, 28 Wash. 590, 68 Pac. 1051.

The decision of the supreme court of the United States in the principal case has, with one exception which we shall hereafter notice, disposed of the other grounds relied on to dismiss the appeal. The motion is denied.

One of the grounds urged on the motion to dismiss really goes to the merits of the case and will be so treated. It is stated by counsel as follows:

"The judgment for the disobedience of which the contempt proceedings were instituted is a void judgment, and was entered by the court below in excess of its jurisdiction, and the respondents were not bound to obey it."

We do not think this position tenable. Although the judgment entered by the lower court, upon remand of the case decided in 40 Wash. 315, 82 Pac. 412 (*Nicomen Boom Co. v. North Shore Boom etc. Co.*), went, in the opinion of respondents, further than the law and facts warranted (it has since been held otherwise), and included boundaries beyond the true limit of relator's property, the judgment would not be for that reason void. Jurisdiction is to be determined by reference to the subject-matter of a proposed or pending action. In the principal case the subject-matter was not to determine the boundaries between the areas claimed by the parties, but to find out which of them was entitled to booming privileges in North river under the state law. The statute (Laws 1890, p. 470 *et seq.*) provides that a company may be organized, and having complied with certain statutory requirements,

shall have the first right of booming logs in the stream over which it seeks to assert its jurisdiction. The legislature has seen fit to give to these companies a *quasi* public character. Boom companies are in effect common carriers, and to encourage them as a necessary adjunct to a leading industry upon which the welfare and prosperity of a large part of our population depends, has declared that the first in time shall be first in right. So long, then, as this question is before the court, it is within its jurisdiction, and its judgment cannot be collaterally questioned or disregarded because the court may have made an error in fixing the boundaries of the boom grounds.

Much of the briefs and time in oral argument was taken up with a discussion of the nature of the first proceeding to remove the principal case from the state to the Federal court. On the one hand it is contended that it was an attempt to appeal where no appeal is contemplated or permitted in law or by the practice in the Federal courts, and for that reason absolutely void; while, on the other hand, it is insisted that the admitted writ of review which was subsequently sued out was sued out solely in the interest of prudence and caution, to avoid the question occurring as to the finality of the judgment of this court; that the first writ or appeal was dismissed voluntarily; that no motion was directed to it by relator; that the effect of the proceedings and the relations of the parties were in no way changed; and that the latter writ, being of admitted worth, it had a right under its supersedeas bond to operate its boom, and thus, acting in good faith, it and its officers and attorneys are not guilty of contempt.

It will thus be seen that, with the disposition of these preliminary questions, the only question for us to decide is whether respondent, having prosecuted its cause in good faith in the Federal courts, in a case which, according to the judgment of the supreme court of the United States involved no Federal question, and was therefore dismissed for want of jurisdiction by that court, will subject relator to the penal-

ties of the chapter of our civil code devoted to contempts and their punishments. We have already said that, were the state the party complaining, the holding of the trial court that there was no malice or wilful intent to interfere with the orderly execution of the process of that court would not be disturbed; but considering our statute in the light in which we have already discussed it, an altogether different question is presented. That the relator has been deprived of a valuable property right ever since the rendition of judgment in the principal case cannot be denied. It has suffered a wrong and is entitled to its remedy. In the absence of the statute, it would of course be relegated to an action for damages or an action upon the supersedeas bonds. But it would seem that the statute (Bal. Code, § 5807; P. C. § 1476), by its very terms gives the relator its choice of remedies.

"If any loss or injury to a party in an action, suit, or proceeding, prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit, or proceeding by the aggrieved party for such loss or injury."

If, therefore, in lieu of the ordinary action, relator desires to and is willing to take its damages in this proceeding, respondent can have no ground for complaint. It is liable in any event. Its appeal and writs were ineffectual and have been either abandoned or dismissed for want of jurisdiction. In such cases there can be no room for the contention that the judgment was superseded. *Jabine v. Oates*, 115 Fed. 861; *Verden v. Coleman*, 22 How. 192, 16 L. Ed. 336; *Saltmarsh v. Tuthill*, 12 How. 387, 13 L. Ed. 1034; *Sage v. Central R. Co.*, 93 U. S. 412, 23 L. Ed. 933.

The only question that might occur in this connection is the meaning of the word "may," as used in § 5807, which we have quoted. The authorities in which this word has been

construed are so numerous that time and space would be con-
sumed unnecessarily by a recapitulation of them.   Primarily,
the word should be taken in its ordinary meaning, and be
regarded as permissive only.   But, after all, its meaning is to
be determined in each case from the apparent intent of the
statute in which it is employed; so that, in all remedial
statutes or whenever the rights of the public or of third per-
sons depend on the exercise of the power of a court or public
officer, or the performance of a duty, and a claim *de jure* that
the power may be exercised exists, it should be construed to
mean "shall."   The authorities upon this subject are col-
lected in Words and Phrases, vol. 5, pp. 4420-4447.   Refer-
ence may, however, be made to a few that seem to us to bear
directly upon the instant case.

In *Rock Island County Supervisors v. United States*, 71
U. S. 435, 18 L. Ed. 419, the supreme court of the United
States said:

"The conclusion to be deduced from the authorities is that
where power is given to public officers, in the language of the
act before us, or in equivalent language—whenever the pub-
lic interest or individual rights call for its exercise—the
language used, though permissive in form, is in fact per-
emptory.   What they are empowered to do for a third per-
son the law requires shall be done.   The power is given, not
for their benefit, but for his.   It is placed with the depositary
to meet the demands of right, and to prevent a failure of
justice.   It is given as a remedy to those entitled to invoke
its aid, and who would otherwise be remediless.   In all such
cases it is held that the intent of the legislature, which is the
test, was not to devolve a mere discretion, but to impose 'a
positive and absolute duty.' "

See, also, *Mason v. Fearson*, 50 U. S. 248, 13 L. Ed. 125;
*People ex rel. Conway v. Supervisors*, 68 N. Y. 114.

In *Brainerd v. De Graef*, 29 Misc. Rep. 560, 61 N. Y.
Supp. 953, it was held that a statute providing that the
court "may" award costs against administrators for unrea-
sonably resisting or neglecting the payment of claims against
the estate, was mandatory.   It has been frequently held that

statutes providing that under certain contingencies a court "may" adjudge costs in the event of recovery are imperative. *Carter v. Barnum*, 24 Misc. Rep. 220, 53 N. Y. Supp. 539; *Crake v. Powell*, 10 Ency. Law & Eq. 329; *Macdougall v. Paterson*, 11 C. B. 755; *Grantham v. Thrall*, 31 How. Prac. 464; *Lansing v. Easton*, 7 Paige (Ch.) 364.

A similar statute in Wisconsin employs the word "shall" instead of "may." In a case—*Emerson v. Huss*, 127 Wis. 215, 106 N. W. 518—the court drew a distinction between criminal and civil contempts, holding that the latter possessed all the characteristics and incidents of a civil action. In *Lorick v. Motley*, 69 S. C. 567, 48 S. E. 614, the court said:

"All contempt proceedings grow out of the duty of the individual to obey the orders of the court and the court's duty to maintain its dignity and authority; but the maintenance of the court's dignity and authority is not itself the ultimate purpose to be attained. This is rather a means to the practical end, that litigants who submit their personal and property rights to a tribunal established by law may have their rights as adjudicated by that tribunal protected and enforced by its power. When the contempt does not directly affect any particular individual, the penalty is inflicted for the benefit of the state at large. When, on the other hand, property of an individual is taken or destroyed in contempt of the court's order, those interested have a right to ask of the court its restoration or payment of its value at the hands of the offender, and the court requires such restoration or payment of its value as part of the punishment. In each instance the ultimate purpose is the protection of adjudicated right."

The statutes of Utah are in form as is our own. It was held in *Davidson v. Munsey*, 29 Utah 181, 80 Pac. 743, that the court had power to enter a judgment for ascertained damages as indemnity for the actual loss or injury caused by the misconduct of the other party. So in *Snow v. Snow*, 13 Utah 15, 43 Pac. 620, the distinction between criminal and civil contempts is pointed out, the latter being given the character of a civil action.

In the case at bar the statute is manifestly remedial, and intended to promote justice without unnecessary delay and without resort to vexatious litigation. The damages to which respondents must respond in some action being possible of exact determination from the evidence, it was the duty of the court to act upon the demand of the relator, enter a finding of contempt under § 5807, *supra,* and assess the damages. The trial court made the following finding:

"That said Nicomen Boom Company would have made a profit of forty cents per thousand feet, board measure, on all of the said logs which were caught, boomed and rafted by the said North Shore Boom and Driving Company as heretofore found, if said Nicomen Boom Company had caught, boomed and rafted said logs, to wit: said 42,165,453 feet, board measure."

The evidence is conflicting as to the amount of profit which would have been made by relator had its work been uninterrupted, and we therefore adopt the findings of the trial judge. Although respondents proceeded in perfect good faith and are not therefore guilty of any act criminal in its nature warranting fine or imprisonment, they are technically guilty of contempt under the statute, which is intended for the advantage and benefit of the opposite party, and are answerable to the extent of the loss sustained.

The case will be reversed, and remanded with instructions to enter judgment in accord with this opinion.

RUDKIN, C. J., MOUNT, DUNBAR, CROW, and GOSE, JJ., concur.

FULLERTON, J., dissents.

PARKER and MORRIS, JJ., took no part.

ON REHEARING EN BANC.

[Decided February 19, 1910.]

CHADWICK, J.—In the main case, decided July 26, 1909, we held the defendant boom company, J. W. Kleeb, John F.

Hobi and W. H. Abel for the civil damages resulting to the appellant from the continued use of appellant's boom ground, pending ineffectual attempts to carry the original controversy between the Nicomen Boom Company and the North Shore Boom & Driving Company to the supreme court of the' United States. Mr. Abel is a stockholder in the North Shore Company. He was not an officer, but with other attorneys advised respondent company that it had a right to the use and occupation of the boom grounds in dispute pending the decision of the supreme court of the United States. The lower court found, and a careful review of the evidence has convinced us, that the advice of counsel was given in good faith and in no way intended as an affront to the dignity of this or the trial court, or in contemptuous disregard of our orders, but under the mistaken idea that the judgment had been lawfully superseded. This we held was not so. Judgment being asked under the civil damage statute (Bal. Code, § 5807), and the amount thereof being subject to exact calculation, upon the findings of the trial judge, we ordered judgment entered accordingly.

The point was not made on the argument of the main case, but upon rehearing we are asked to modify our decision and direct that no judgment be entered against Mr. Abel. The point is made by appellant that, but for the advice of Mr. Abel, the judgment in this court would not have been disregarded; that he is more guilty than they, both Kleeb and Hobi, because of his knowledge and understanding of the law, and that he should therefore be held to respond to a fine equalling the amount of damages suffered. The question of Mr. Abel's wilful contumacy is foreclosed by our former opinion. Had we found him to be chargeable with contumacious conduct, we would have so declared and subjected him to a fine therefor. But the question now before us, broadly stated, is whether an attorney, who, in good faith and with some foundation for his opinion, so advised his client

that the client disregarded an order of the court, should be
held jointly with the client to pay to the party aggrieved
civil damages which the court has the power to assess as com-
pensation under the statute. The power to punish for con-
tempt inheres in all courts of record, and can be exercised
independently of the statute. But the power to award an
indemnity in the way of a fine to the injured party rests
wholly upon the statute, and in the exercise of its power the
court cannot go beyond its terms. 9 Cyc. 54. Where in-
demnification to the party is allowed, the rule is that, where
the alleged contempt is not wilful or defiant, but the act was
an exercise of a supposed right done under the advice of
counsel given in good faith, the act will not be punished as
a direct, constructive, or criminal contempt, but as a civil
contempt; that is, the offending party will be required to
make the other party whole for the damages sustained there-
by. *French v. Commercial Nat. Bank*, 79 Ill. App. 110;
*Matthews v. Spangenberg*, 15 Fed. 813; *Smith v. Cook*, 39
Ga. 191; *Hawley v. Bennett*, 4 Paige 163. The remedy of
the statute, as was said in our first opinion, is in lieu of the
ordinary action for damages.

Referring now to the language of the statute: "If any
loss or injury to a party in an action, suit or proceeding,
prejudicial to his rights therein, have been caused by the con-
tempt, the court  .  .  .  may give judgment that the
party aggrieved recover of the defendant a sum of money
sufficient to indemnify him," etc., this statute requires con-
struction only as to the meaning of the words "contempt"
and "defendant," as employed therein. Manifestly the con-
tempt is the act of the other party to the controversy, the
party litigant, or, if a corporation, such of its servants and
officers as are named in or bound by the injunctive order.
There is nothing in the statute to indicate that it was in-
tended to include one who in good faith advises the wrong.
It is unquestionably the rule that an attorney will not be

held either for a direct or constructive contempt, unless it is made to appear that he wilfully offended against the dignity of the court. An offending attorney would be liable to the state for a wilful disregard of the orders of the court, but it would require a forced construction of the statute to make him subject to civil liability because of his advice honestly given. Regardless of the statute now under consideration, the undoubted rule is that, if an attorney acts an honest part and is actuated by no improper motives, he cannot be held liable for a tort because of his mistaken advice and its consequences. *Roth v. Shupp*, 94 Md. 55, 50 Atl. 430; *Farmer v. Crosby*, 43 Minn. 459, 45 N. W. 866; Cooley, Torts (3d ed.), 221.

In High on Injunctions (4th ed.), § 1440b, it is said:

"But it is to be observed that where it is sought to hold one who is not a party to the suit or named in the writ liable for disregarding an injunction, the punishment is imposed not upon the theory that the person thus charged is in any way bound by the injunction itself or that he is guilty of a technical violation of the writ, but solely for the purpose of protecting and upholding the power and dignity of the court as against one who, although not bound by the injunction as a party to the suit, has knowingly and wilfully defied the authority of the court in setting its order at naught. In such case the proceeding is criminal in its nature and is without regard to any injury which may be inflicted upon the defendant as the result of the violation of the writ, and it is to be distinguished from a contempt proceeding against a party to a suit for a violation of the injunction, which is remedial in its character and is ordinarily brought for the purpose of affording redress and compensation to the plaintiff for the injury resulting from the violation of the writ. Where, therefore, a contempt proceeding is brought against a person upon the theory that he is technically bound by the injunction as a party to the suit, it is improper to impose punishment for a violation of the injunction, where it appears that he was not a party to the injunction action, either by name or representation, or in any way bound by the decree."

It has been most strenuously urged, not only in the petition for rehearing but also on oral argument, that a civil judgment could not in any event be entered, unless the parties bound thereby had been found guilty of a criminal contempt, actual or constructive. A consideration of this question is not now material in the strict sense, but is to some extent apropos of our present discussion, in that it will serve to illustrate the difference between a *quasi* criminal contempt and a civil contempt, and will therefore be incidentally noticed. It is said that it would be anomalous, if not ridiculous, to hold that a party was not guilty of contempt, and at the same time enter a judgment for the loss sustained. It might have been better, and the objects of the law more readily understandable, if the remedy afforded by Bal. Code, § 5807, had not been made a part of that chapter which puts in statutory form the common law powers of the court. But a casual reference to the books will reveal the spirit and the purpose of the act. It makes a judgment for criminal contempt not only unnecessary but possibly unwarranted, unless there has been a wilful disobedience of the court's order. The party may be guilty of both a criminal contempt and a civil contempt, or he may be guilty of the one and not the other. A fine payable to the state may be imposed and a civil judgment of indemnity to the party may be rendered, not because they are interdependent, but because the dignity of the court has been affronted and at the same time a loss imposed on the other party. If either element is lacking, the court may render judgment accordingly. The state of Wisconsin, under a statute the same as our own except that it says if the injury be caused "by the misconduct" of the party instead of "by the contempt," as used in our statute, has held:

"The distinction between a proceeding which results in criminal punishment under ch. 119, or sec. 20 of ch. 149, and one which results in awarding indemnity to the injured party, is manifest and substantial. One is criminal in its character,

the other civil; one is prosecuted by the state outside the particular cause in which the offense was committed (if committed in the progress of a cause), the other is a proceeding in the cause in which the offense was committed, or ancillary to it; one results in punishment by fine, or imprisonment, or both, inflicted to vindicate the authority and dignity of the court, which the defendant has contemned; the other in adjudging the offender to pay a sum sufficient to indemnify the injured party for the loss he has sustained by the misconduct of the offender, and to satisfy his costs and expenses. In the one case, the fine goes to the school fund, in the other the indemnity goes to the injured party; . . .." *In re Pierce*, 44 Wis. 411.

See, also, *Emerson v. Huss*, 127 Wis. 215, 106 N. W. 518; *People v. Compton*, 1 Duer 512 (8 N. Y. Sup'r Ct.).

It follows that a criminal contempt, actual or constructive, or, as Blackstone says, direct or circumstantial, partakes of the quality of an offense against the state; whereas a civil contempt under the statute is such disobedience of an order of a court of competent jurisdiction entered for the benefit or advantage of a party to a civil action as works a loss or injury to the litigant. The one is *quasi* criminal, the other is civil wrong; the one is absolved by fine payable to the state or imprisonment, the other by reparation to the other party litigant.

These considerations convince us that Mr. Abel cannot be held personally liable in this case. Aside from the general rule as to the liability of attorneys to third persons, it seems to us that to so hold would stifle the free expression of honest opinion upon any question where the law is unsettled and the issue in doubt. If the Nicomen Boom Company could not hold Mr. Abel in a direct proceeding—and we have shown that it could not—he cannot be held under the statute unless he comes within its terms. The injured party cannot make the attorney of his adversary a surety or sponsor for his debt because of his error of judgment. Our former opinion will be so modified as to exempt Mr. Abel from the liability

there imposed. With this difference it will be reaffirmed. Upon remand, judgment will enter accordingly.

RUDKIN, C. J., GOSE, MORRIS, PARKER, and CROW, JJ., concur.

MOUNT, J. (dissenting)—I dissent. The majority opinion is probably correct upon the questions discussed, but Mr. Abel was more than a mere attorney in the case. He was one of three stockholders in the corporation which did the damage. He did not hold the office of director, but he was the attorney for the corporation from the time it was incorporated. He was an active, interested party, and advised the officers to do the things complained of, if he did not directly participate therein himself. The findings in the contempt proceeding recite:

"That since the entry of the judgment in the superior court of the state of Washington for Pacific county, the defendants North River Boom & Driving Company, John W. Kleeb, John F. Hobi, its officers, and W. H. Abel as its attorney, have constantly maintained and operated said boom and other structures of the North Shore Boom & Driving Company upon the location of the Nicomen Boom Company in said North river. . . . and each of them have constantly since said date . . . boomed logs coming down said North river and thereby interfered with the boom and booming structures of the said Nicomen Boom Company in said North river . . . and that defendants and each of them have constantly interfered with the relator's boom," etc.

Under this finding and other conceded facts, it cannot be said that Mr. Abel merely as attorney in this particular case advised the officers of the corporation in good faith. Nor can it be said that he was a mere passive stockholder. He was clearly an active, interested party, advising and directing the officers of the corporation in his interest at all times. Under these facts it seems that he should be held liable in civil damages equally with those whom he directed and assisted by his advice. The mere fact that he was an attorney

2—55 WASH.

in the case ought not to release him.   If so, it is unfortunate for the other two stockholders that they were not also attorneys for their own company in this particular case.

DUNBAR, J., concurs with MOUNT, J.