THE PEOPLE OF PUERTO RICO, ETC., Plaintiff, *v.* PORTO RICO RAILWAY, LIGHT & POWER Co., Defendant and Appellant; PUERTO RICO ILUSTRADO, INC., ET AL., Respondents and Appellees.

No. 8165. Argued April 29, 1940.—Decided May 31, 1940.

*Brown, González & Newsom* for appellant. *R. Cuevas Zequeira* for appellees.

Mr. Justice Hutchison delivered the opinion of the court.

The Porto Rico Railway, Light & Power Co., defendant in an action brought by The People of Puerto Rico to condemn and appropriate certain property for public use, filed in the district court a petition for an order to show cause why a certain newspaper, its director and its administrator should not be punished for contempt. Respondents in the contempt proceeding filed an answer and a motion to dismiss the petition. Petitioner appeals from an adverse order or judgment which disposed of the proceeding. Appellees move to dismiss the appeal upon the ground that the same is without statutory authority and frivolous for reasons stated in a motion to dismiss the contempt proceeding filed in the district court, and for other reasons stated as follows:

"(a) Because as no charge had been made in the complaint regarding the commission of acts implying disobedience to orders, decrees, or rulings entered in the main action in favor of the petitioner, the latter lacks the status of aggrieved party, which is indispensable to bring an appeal from any judgment discharging the respondents.

"Section 294 of the Code of Civil Procedure of Puerto Rico.

"*Cortés* v. *Rivera,* 41 P.R.R. 297; *Diego Agüeros & Co.* v. *Navarrete,* 36 P.R.R. 789; *Cruz* v. *Heirs of Jiménez,* 32 P.R.R. 767; *Freyre* v. *Quintero,* 23 P.R.R. 119.

"(b) Because, even granting that the facts alleged in the complaint should constitute lack of respect for the authority and dignity of the court, the contempt would be of a penal nature and, as in any other public offense, a judgment of dismissal is unappealable, because in such cases there is no aggrieved party. The right of appeal is only available to a convicted defendant. Section 347 of the Code of Criminal Procedure; *Gotay Ex parte and The People,* 37 P.R.R. 441; *People* v. *Lorenzo,* 18 P.R.R. 952.

"(c) Because, as the defendant and petitioner charged the respondents with acts of a punishable nature that might have resulted in a judgment of conviction against such defendants, with deprivation of their liberty, as the means of vindicating the dignity of the court, the subject of the contempt, the proceedings are in the nature of a criminal prosecution, in which the real parties are The People, as prosecutor, and the respondents, as defendants.

" 'The offense of the appellant (criminal contempt) is certainly a criminal offense. I do not say that is an indictable offense but whether indictable or not, it is a criminal offense, and it is an offense and the only offense that I know of which is punishable at common law by summary process. The proceeding is not between the parties to the original suit, but between the public and the defendant.' *Michaelson* v. *United States, etc.,* 266 U. S. 42, 35 A.L.R. 457.

" 'A litigant has no appeal from the action of the judge in dealing with the matter. The litigant may not control this process, which is designed for the protection of the court, and which is to be invoked or not as its discretion may dictate, but which should be employed freely where the interests of justice and the rights of litigants·demand it. "The doctrine is well-nigh without exception, that the issuance *vel non* of contempt proceedings lies in every instance in the sound discretion of the court." (4 Ency. of Pl. & Pr. 774).' *People* v. *Durrant,* 116 Cal. 179, 209.

" 'These contempts are infractions of the law visited with punishment as such. ·If such acts are not criminal, we are in error as to the most fundamental characteristic of "crimes" as that word has been understood in English speech.' *Ex parte Grossman,* 267 U. S. 87, 38 A.L.R. 131, 136; *State* v. *Magee Pub. Co.,* 38 A.L.R. 142.

"(d) Because, as the proceedings for contempt were based on the commission of specific acts charged against the respondents, and as the latter entered a denial of such acts, it was incumbent on the defendant and petitioning corporation to submit evidence in support of the essential allegations of the complaint; and one of the grounds relied upon by the lower court, as stated in the order appealed from, was the failure of the defendant to submit evidence in support of the allegations of his complaint."

Appellant, in opposition to the motion, cites the following statutory provisions and authorities: *Del Toro* v. *Municipal Court,* 16 P.R.R. 89; *Ex parte Paniagua et al.,* 33 P.R.R. 863; Section 295 of the Code of Civil Procedure; Section 345 of the Code of Criminal Procedure; *In re Montalvo,* 22 P.R.R. 608; *People* v. *De Jesús,* 39 P.R.R. 300; *People* v. *Lastra,* 50 P.R.R. 114; *People* v. *Bigio,* 51 P.R.R. 161; *Sánchez* v. *Romany,* 53 P.R.R. 568; *Lamb* v. *Cramer,* 285 U.S. 217; *Smith* v. *Clothier* (Kan.), 213 Pac. 1074; *Gibson* v. *Rogers* (Ky.), 109 S.W. (2d) 402; *Baskin* v. *Livers* (Wash.), 43 Pac. (2d) 42; *Red River Valley Brick Corp.* v. *Grand*

*Forks* (N.D.), 146 N.W. 876; *State* v. *North Shore Boom etc. Co.* (Wash.), 103 Pac. 426, 107 Pac. 196; *Vilter Mfg. Co.* v. *Humphrey* (Wis.), 112 N.W. 1095, 13 L.R.A. (N.S.) 591; *In re Christensen Engineering Co.*, 194 U.S. 458; *Thompson* v. *Nelson* (Neb.), 96 N.W. 194; *State* v. *Knight* (S.D.) 54 N.W. 412; *Spannaus* v. *Luech* (Minn.), 279 N.W. 216; *People* v. *Forbes* (N.Y.), 38 N.E. 303; *In re Opinions of the Justices* (Mass.), 17 N.E. (2d) 906); *Blackenberg* v. *Commonwealth* (Mass.), 157 N.E. 693; Section 348 Code of Criminal Procedure; 17 C.J.S. 71, 74; 12 Am. Jur. 433; *Bessette* v. *W. B. Conkey Co.*, 194 U.S. 324; *State* v. *Bland* (Mo.), 88 S.W. 28; *Doyle* v. *London Guarantee & Accident Co.*, 204 U. S. 599; *In re González*, 22 P.R.R. 26; *Oronoz* v. *Montalvo*, 21 P.R.R. 331.

Appellees in a reply memorandum rely on: 13 C.J. 57; *Ramsay* v. *Ramsay*, 14 A.L.R. 712, 716, 717; *Ex parte Earman* (Fla.), 95 So. 755; *People* v. *Peters* (Ill.), 137 N.E. 118; *Bender* v. *Young* (Mo.), 252 S.W. 691; *Ex parte Wolters* (Tex.), 144 S.W. 531; *Smith* v. *Smith* (W. Va.), 95 S.E. 199; *Witmer* v. *District Court* (Iowa), 136 N.W. 113; *Ex parte Grossman*, 267 U.S. 87; *State* v. *Magee Pub. Co.*, 38 A.L.R. 142; Section 347 Code. of Criminal Procedure; Section 294 Code. of Civil Procedure; *Michaelson* v. *United States*, 266 U.S. 42; *People* v. *Durant*, 116 Cal. 209; *Kelly* v. *Montebello Park Co.*, 28 A.L.R. 60, 61; Rapalje on Contempts 207; Dangel on Contempts (1939 ed.) 285.

The petition for an order to show cause, a motion to strike from the petition certain parts thereof, a motion to dismiss the petition and the answer were all entitled:

The People of Puerto Rico,
  represented by José E. Colom,
  Commissioner of Interior,
          Plaintiff,
      *vs.*
Porto Rico Railway, Light &
  Power Company,
          Defendant.

Civil No. 32,557.

Eminent Domain.

Petitioner alleged that:

The district court at all times mentioned in the petition had under consideration case No. 32,557, brought by The People of Puerto Rico through its Commissioner of the Interior, José E. Colom, as plaintiff, against petitioner as defendant. Petitioner had filed in that case, September 22, 1939, a motion to strike parts of the complaint. The motion had been submitted upon oral argument and briefs and had been overruled October 16, 1939. On October 26, petitioner had demurred to the complaint and the demurrer had been submitted November 6. Petitioner was given ten days within which to file a brief and The People forty-eight hours within which to reply. On November 8, the newspaper "El Mundo", published by Puerto Rico Ilustrado, Inc., its director, José Coll Vidal and its administrator, Angel Ramos, printed, circulated and distributed throughout the city of San Juan and the Island of Puerto Rico, the daily edition of the said newspaper containing an editorial commenting upon and criticizing the pending action, and expressing for public consumption the newspaper's opinion as to the merits of the case and especially as to the merits of petitioner's demurrer, criticizing the same unfavorably and characterizing the same as a measure exclusively designed to delay the course of the action. A copy of the editorial was attached to the petition as part thereof and marked Exhibit ''A''.

The effect of the editorial marked Exhibit ''A'' was prejudicial to petitioner as defendant in the said action, and constituted a discussion of the said case beyond the reach of the court, which also had the effect of tending to influence the mind of the court to the prejudice of defendant. The said editorial or publication reflected upon the dignity and decorum of the court because it attempted to usurp the exclusive right of the court to determine questions pending consideration, without such determination being affected or disturbed by commentaries, criticism and gratuitous opinions expressed by third persons and disseminated throughout the public. The said editorial or publication placed the court in a difficult and embarrassing position in passing upon defendant's demurrer because if the court had thought the same should be sustained, it would have been exposed to the contempt, disdain, unjust and contemptuous criticism of the public, or part thereof due to the opinion which the said public might have formed by reason of such publication or editorial, the effect of the said publication or editorial continued and would continue until the case should be finally decided both in the district

court and on appeal. The said editorial or publication also had the effect of depriving petitioner of its right to an impartial trial by a competent court in accordance with legal practice and procedure without being affected or disturbed by influences, commentaries or opinions beyond the reach of the court.

The greater part of the commentaries and criticism contained in the said publication or editorial marked exhibit "A" was untrue and unjustified by the record in the said case. The said publication or editorial overstepped the bounds of the freedom of the press and, in the judgment of petitioner, amounted to a contempt of court.

On December 21, 1939, petitioner filed its answer in the above mentioned action and two days thereafter, while the said case was still pending, the same newspaper, "El Mundo", its director, José Coll Vidal, and its administrator, Angel Ramos, December 23, 1939, published or caused to be published, circulated and distributed throughout the city of San Juan and the Island of Puerto Rico, the daily edition of said newspaper which contained a commentary and criticism in the form of an editorial going into the merits of the case, and of the averments and defenses and characterizing them as absurd and groundless, and reaffirming the opinion of the said newspaper that the same had been interposed for the sole purpose of delaying the course of the action. A true and correct copy of the said publication or editorial was attached to the petition as a part thereof and marked exhibit "B".

The effect of the publication or editorial attached to the petition as exhibit "B" was prejudicial to petitioner as defendant in the said action, and was a discussion of the said case beyond the reach of the court. The said publication or editorial had placed the court in a difficult and embarrassing position as to the final disposition of the case and especially as to the order or orders which might be entered with reference to the averments and defenses contained in petitioner's answer because, if sustained, the court would be subjected to the contempt, disdain, unjust and contemptuous criticism of the public or part thereof due to the opinion which the said public might have formed by reason of the said publication or editorial. The effect of the said publication or editorial upon the court continued and would continue until the case should be finally decided in the district court or on appeal. The said publication or editorial also had the effect of depriving petitioner of its right to an impartial trial by a competent court in accordance with legal practice and procedure without being affected or disturbed by influences, commentaries or publications beyond the reach of the court.

The greater part of the commentaries and criticism contained in the said publication or editorial marked exhibit "B" concerning the action mentioned therein was untrue and unjustified by the record in said case, and the said publication or editorial overstepped the bounds of the freedom of the press, and, in petitioner's judgment, amounted to a contempt of court.

The prayer was for an order to show cause why respondents should not be punished for contempt by reason of the publication of the two editorials mentioned in the petition.

The prayer might have been more specific. It should be construed, however, in the light of the petition itself including the title. The fact that the petition and all subsequent pleadings were entitled in the same manner as the main action is significant. To paraphrase the language of Mr. Justice Lamar in *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 446: The petition was not entitled *The People of Puerto Rico* v. *Puerto Rico Ilustrado Inc. et als.* or *In Re Puerto Rico Ilustrado, Inc. et als.,* "as would have been proper, and according to some decisions necessary, if the proceedings had been at law for criminal contempt." If, in the instant case, an unconditional fine had been imposed upon respondents and, if on appeal they had insisted that the penalty had been inflicted not for the benefit of parties but as "retribution for a crime", this court might have answered the contention by pointing out as did the Supreme Court of the United States in *Fox* v. *Capital Co.,* 299 U.S. 105, 109:

"... In levying the fine, the court was not acting *sua sponte,* or at the instance of the government through a prosecuting officer. *Gompers* v. *Bucks Stove & Range Co., supra; Lamb* v. *Cramer, supra; Union Tool Co.* v. *Wilson,* 259 U. S. 107, 112; *Michaelson* v. *United States,* 266 U. S. 42, 64; *Leman* v. *Krentler-Arnold Hinge Last Co.,* 284 U. S. 448, 452. It lent a helping hand to a suppliant for aid."

From the body of the petition it is reasonably clear that the gravamen of the charge was an invasion of petitioner's right to a fair and impartial trial by a court uninfluenced by the obvious tendency and possibly effect of violent newspaper

attacks upon petitioner's pleadings in the pending action before the court had been given an opportunity to pass upon the merits of such pleadings. It follows, we think, that the prayer was for remedial action rather than a purely punitive order in vindication of the court's authority.

The first five paragraphs of the headnotes to *Lamb* v. *Cramer*, 285 U.S. 217, read as follows:

"1. An attorney for a defendant in a suit to set aside conveyances in fraud of creditors, received from his client while the cause was pending a transfer of part of the property in controversy, as a fee for legal services. Later a decree was entered adjudging that the plaintiffs had liens on all the property involved and appointing a receiver to liquidate the liens. *Held:*

"(1) That the attorney took the transfer subject to the equities alleged in the bill and to the decree. P. 219.

"(2) His retention of the property after entry of the decree was a contempt of court which might be proceeded against civilly. P. 219.

"(3) A proceeding in contempt for the purpose of forcing restoration of the diverted property in order to carry out the decree in the main suit for the benefit of the plaintiffs was a civil proceeding. P. 220.

"2. The same conduct may be both civil and criminal contempt. P. 221.

"3. It is the purpose of the punishment, rather than the character of the act punished, which determines whether the proceeding is for civil or criminal contempt. P. 220.

"4. A judgment of the District Court dismissing a civil contempt proceeding for want of jurisdiction, *held* final and appealable. P. 221.

"5. A civil contempt proceeding in aid of a suit in equity and of the decree made or to be made therein, may be maintained independently of the suit, and is independently appealable. *Id.*"

We quote from the opinion:

"The court below rightly held that upon the facts presented by the petition, proceedings might be had against Lamb, either by bill in equity, as was done by the supplemental bill filed by the receiver in *Lamb* v. *Schmitt, post,* p. 222, or by contempt proceedings, as in the present case, or by both, to compel restoration of the diverted property to the custody of the court.... His receipt and diversion of the property, which was then in *gremio legis,* see *Metcalf* v. *Barker,*

187 U. S. 165, 173 *et seq.; Pierce* v. *United States,* 255 U. S. 398, tended to defeat any decree which the court might ultimately make in the cause. That and his retention of the property after the decree was entered, were in fraud of the rights of the plaintiffs to prosecute the suit to its conclusion, and an obstruction of justice constituting a contempt of court which might be proceeded against civilly. *Merrimack River Savings Bank* v. *Clay Center,* 219 U. S. 527, 535, 536; *Clay* v. *Waters,* 178 Fed. 385, 390, 391. Cf. *In re Swan,* 150 U.S. 637.

"    .    .    .    .    .    .    .    .    .    .    .

"A proceeding to secure such relief is civil in its nature. See *Gompers* v. *Bucks Stove & Range Co., supra,* p. 449; *Bessette* v. *W. B. Conkey Co., supra,* p. 338; *Leman* v. *Krentler-Arnold Hinge Last Co.,* 284 U. S. 448.

"The decree of the District Court, dismissing the petition, finally adjudicated the rights asserted by it. *Shaffer* v. *Carter,* 252 U. S. 37, 44; *The Pesaro,* 255 U. S. 216, 217; *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 U. S. 516, 517. The proceeding, based on transactions had with the property involved in the principal suit, was in aid of that suit and of any decree which might be entered in it. It could be maintained, independently of the suit, either before or after the decree was entered, so long as it remained unsatisfied; and the appeal was not dependent upon an appeal from the decree. See *Root* v. *Woolworth,* 150 U. S. 401, 411; *Leman* v. *Krentler-Arnold Hinge Last Co., supra; Gompers* v. *Bucks Stove & Range Co., supra,* pp. 451, 452; *Utah* v. *United States, supra.*"

Much has been said and many sweeping statements have been made concerning the test whereby the character of a proceeding for contempt is to be determined. Such statements should be construed in the light of the facts under consideration at the time the statements were made. None of these tests is infallible or exclusive. None of the rules, however general, should be blindly followed regardless of the circumstances in a particular case. It cannot be said that in all cases the petitioner in a proceeding for civil contempt is without a remedy unless respondent has failed "to do something ordered to be done by a court or judge in a civil case for the benefit of the opposing party therein." This seems to be the theory of the second ground of the motion to dis-

miss in the district court. It is also the theory of the first ground of the motion to dismiss the present appeal. The second ground of the motion to dismiss in the district court is the only ground mentioned by appellees in their memorandum, and the other grounds relied on in the district court add little or nothing to those upon which the motion to dismiss the present appeal is based. In *Lamb* v. *Cramer, supra,* Lamb had not failed to do anything which he had been ordered to do by the district judge.

The district judge in his statement of facts, opinion and order decided adversely to respondents the questions raised by the second, third, fourth and sixth grounds of the motion to dismiss defendant's petition, but finally reached the conclusion that he should "dismiss the petition and acquit the respondents."

We are not now concerned with the merits of the contempt proceeding or with the merits of the present appeal. The dominant feature of the proceeding, irrespective of any question going to the merits, was its civil aspect.

The motion must be denied.